GILBERT M. HATCH *v.* AMOS S. HATCH, Administrator of EPHRAIM HATCH.

The kindred of the half blood, on the mother's side, inherit equally, in this state, with the kindred of the whole blood, in the same degree.

If a person die, leaving no widow, issue, father, mother, brother, or sister living, but leaving surviving him children of his deceased brothers and sisters, and also grand children of deceased brothers and sisters, whose parents are also dead, his estate must be divided equally among all the children, who are living, of his deceased brothers and sisters, to the exclusion of the grand children,—the case coming within the fifth rule for the distribution of estates in chap. 52, sec. 1, of the Revised Statutes.

Hatch v. Hatch, Adm'r.

The term "*relatives*," as used in the fifth rule for the distribution of estates,—Rev. St. 292,—relates only to such relatives as are specifically named in the fourth rule, and does not have reference to the words "*representatives of any deceased brother and sister*," used in that rule. That rule was intended to apply to cases, where some of the brothers and sisters were still living, and not to cases, where they had all previously deceased.\*

APPEAL from the probate court. Upon the settlement of the administrator's account, there was found in his hands the sum of $6588,20, to be distributed among the legal heirs of the intestate, Ephraim Hatch. It appeared, that the intestate died, leaving no issue, widow, father, mother, brother, or sister, and that the nearest of kin, surviving him, were the representatives of his deceased brothers and sisters. The mother of the intestate, at the time of her marriage with the father of the intestate, was the widow of one Starkweather, then deceased, by whom she had issue, then living, brothers and sisters of the half blood of Ephraim Hatch, the intestate ; but all the brothers and sisters of the half blood died, previous to the decease of the intestate, leaving issue, some of whom were living at the time of his decease. It also appeared, that some of the children of the brothers and sisters of the intestate died, previous to his decease, leaving issue who are still surviving.

The probate court ordered, that the estate should be distributed among the next of kin of the intestate, in equal degree, in equal shares *per capita*, and that the corresponding surviving representatives of the intestate's brothers and sisters of the half blood, in equal degree, should be included in this distribution. From this decree Gilbert M. Hatch, claiming to be aggrieved thereby, appealed.

The county court, December Term, 1848,—REDFIELD, J., presiding,—affirmed, *pro forma*, the decree of the probate court. Exceptions by appellant.

---

\* These rules are in these words,—" Fourth. If he shall leave no issue, nor widow, nor father, his estate shall descend, in equal shares, to his brothers and sisters, and to the legal representatives of any deceased brother or sister; and if his mother be living, she shall have the same share as a brother, or sister. Fifth. If none of the relatives, above named, shall survive the deceased person, his estate shall descend, in equal shares, to the next of kin, in equal degree; but no person shall be entitled, by right of representation, to the shares of such next of kin, who shall have died.

*L. B. Vilas* for appellant.

1. The probate court erred, in deciding that the relatives of the half blood were entitled to a share in the distribution. There should be a distinction between relatives of the half blood who have the same father and those having the same mother ; and we insist, that the statute of this state should receive such a construction. If the intestate had died before the death of his father, his property would have been inherited by his father, and then, upon the death of his father, the property would have descended to his children, and the children of the mother, by her former husband, would have inherited none of it. 1 Sw. Dig. 116. 4 Kent 389, 399.

2. The probate court erred in making the distribution *per capita,* instead of *per stirpes.* The fourth clause of our statute of distribution,—Rev. St. 292,—names the legal representatives of brothers and sisters; and the fifth clause says, " if none of the relatives *above named* shall survive the deceased person," his estate shall descend in equal shares to the next of kin in equal degree. We maintain, that the true construction of the statute will distribute an estate *per stirpes,* as long as there are any legal representatives of a brother or sister, or, at all events, among brothers' and sisters' children. 4 Kent 388, 398. *Maxwell* v. *Seney,* 5 Har. & J. 23. 1 N. Y. Rev. St. 742. *Jackson* v. *Thurman,* 6 Johns. 322. *Daggett* v. *Slack et al.,* 8 Met. 450. *Tillinghast* v. *Cook et al.,* 9 Ib, 143.

*Peck & Colby* and *Hebard & Martin* for defendant.

It is clear, that the grand children of the brothers and sisters of the intestate; their parents being dead, are not entitled to a distribution in the estate, if, as we think, the case comes within the fifth rule of our statute of distributions. By this rule, there being no issue, father, widow, brother, or sister, the estate must descend, in " *equal shares,*" to the next of kin. But the grand children, in this case, are not next of kin. And it is equally clear, under this rule, that the distribution is to be made *per capita ;* otherwise it might not be in "*equal shares.*"

But does the case come within rule fifth? The language of that rule is, that " if none of the *relatives* above *named* survive the deceased person," then resort to next of kin. The relatives above named, in rule fourth, are issue, widow, father, brother, sister and

mother,—unless the words "legal representatives of any deceased brother or sister" are to be included among "relatives above named;" but such is not the natural sense of the words, nor the obvious meaning of the reference. It would seem, that the statute allows representation among collaterals only when an estate is divided, under rule fourth, to brothers and sisters living and *representatives* of a deceased brother, or sister; but if no brother or sister is living, then the *next of kin* are resorted to, instead of legal representatives. 2 Kent 342. 2 Bl. Com. 218. *Quinby* v. *Higgins,* 2 Shep. 310. *Pett* v. *Pett,* 1 Salk. 250.

The probate court decreed in accordance with the statute, that the relatives of the half blood should inherit equally with those of the whole blood, in the same degree. Rev. St. 292, § 2. Nor does it make any difference, whether the half blood comes from the father, or mother. The exclusion of the half blood by the common law was founded upon no such consideration.

The opinion of the court was delivered by

POLAND, J. This is an appeal from a decree of distribution, ordered to be made by the probate court, of a portion of the estate of the intestate to certain persons, as the legal heirs to said estate. Ephraim Hatch died intestate, leaving no issue, widow, father, mother, brother, or sister. His nearest surviving relatives were children of his deceased brothers and sisters, some of the whole and some of half blood, and grand children of some of his deceased brothers and sisters, the parents of said grand children having also deceased before the intestate. The probate court decreed the estate to the children of the intestate's brothers and sisters, both of the whole and of the half blood, equally, and excluded the grand children. The legality of this decree now comes before us for decision.

The appellant contends, that this decree was erroneous in the following particulars; 1. He contends, that the children of the brothers and sisters of the half blood should have been excluded in the distribution. 2. That the estate should have been distributed among the children *per stirpes,* as their parents would have taken, if living, and not in equal shares, or *per capita.* 3. That the grand children of any deceased brother or sister should have taken the share, which their grand parent would have taken if living.

These questions must all depend, for decision, upon what shall be deemed the true construction of our statute of distributions. By our statutes no distinction whatever is made, in the descent or distribution of the property of deceased persons, in consequence of the manner in which the property was obtained, whether by purchase, or inheritance ; and all those differences, which obtain in England, and in some of the states, in the descent and distribution of estates for those reasons, are here entirely abrogated, and all property stands alike, regardless of the source from which it came.

As to the first question made, of the right of the half blood, we think nothing more need be said, than to refer to the statute on that subject, which seems to be entirely conclusive. That enacts, in express terms, that " the kindred of the half blood shall inherit equally with those of the whole blood, in the same degree ; " and we see no error in the decree of the probate court upon that ground.

The second and third objections seem to rest upon substantially the same ground, and must both stand or fall together ;—that question is, whether the case at bar comes within the fourth or fifth rule of our statute, providing the manner of distribution and descent of property in this state.

The appellant contends, that the case comes within and must be governed by the fourth rule, and if so, then clearly the estate must be distributed *per stirpes ;* and probably the grand children must also be permitted to share as representatives of deceased brothers and sisters. It is urged, that the word *relatives,* in the fifth section, relates as well to the " representatives of any deceased brother or sister," as to those relatives, who are specially named in the fourth section, and that, until all such representatives are exhausted, the case must be considered as within the fourth section. This view does not appear to us to be sound ; and whether the construction is to be settled upon strict grammatical grounds, or upon the more substantial one of the apparent intent of the framers of the law, the term *" relatives"* should be restricted to such as are specifically named in the preceding section. The fourth section provides, in case the deceased " shall leave no issue, nor *widow,* nor father, his estate shall descend in equal shares to his brothers and sisters, *and* to the legal representatives of any deceased brother, or sister," &c. From this language it is apparent, that this section was intended to

apply to cases, where some of the brothers or sisters were still living, and not to cases, where they had all previously deceased.

Upon a careful examination of the whole of the provisions of our statute, we are satisfied, that this case must be governed by the fifth rule instead of the fourth, and that the judgment of the county court was correct. The question is by no means free from difficulty, and this difficulty is occasioned by a variation of the phraseology of our Revised Statutes from the statute of 1821, which was substantially, if not literally, copied from the statute of 22 *Car.* II., which has also furnished the model for the statutes of distribution of nearly all the states in the union. Where a rule has been so long settled, and without any evil felt under its operation, we think, in order to effect so important a change, language should be used clearly evincing a design to do so,—which we are not able to discover in the present instance. If the case comes within the fifth rule, no question is made, but what the distribution should be *per capita*, among the children of the intestate's deceased brothers and sisters, to the exclusion of the grand children.

The judgment of the county court is therefore affirmed, and the clerk will certify the same to the probate court accordingly.