HOPKINS F. GAINES AND SAMUEL L. GAINES, *Appellants, v. Estate of* SAMUEL P. STRONG.*

*Next of Kin.   Representation.   Heirship.*

Representation and heirship, though they may produce the same result, are not the same thing, and it is not necessary that a person should be the *heir* of another in order to be his *representative*. Heirship is the result, while representation is but a process through which that result is produced.

S. died intestate on the 18th day of February, 1864, leaving a widow, but no kindred in the direct line, either ascending or descending. There survived him one sister and several nephews and nieces, the children of two other sisters who had died in his lifetime; and also several grand-children of these deceased sisters, among whom are the appellants, who are children of a daughter of one of these deceased sisters. The mother of the appellants survived her mother, but died in the lifetime of the intestate, leaving no other children. *Held,* that the appellants, by representation through their mother and maternal grandmother, are heirs of the intestate, and entitled to inherit the share, in the distribution of his estate, which their mother would have received, had she survived him.

APPEAL from a decree of the probate court for the district of New Haven, Addison County, in the distribution of the estate of Samuel P. Strong, which was tried in the county court upon an agreed case which is stated in full in the opinion of the court.

The county court, at the December Term, 1865, Addison county, EVERTS, Asst. J., presiding, rendered judgment, *pro forma*, affirming said decree with costs.

Exceptions by the appellants.

*Stewart & Foot* and *George F. Edmunds*, for the appellants.

*E. J. Phelps* and *L. Meader*, for the appellees.

The opinion of the court was delivered by

KELLOGG, J. The late General Samuel P. Strong, of Vergennes, died intestate on the 18th day of February, 1864, leaving a widow, but no kindred in the direct line, either ascending or descending.

* Argued at Addison County Supreme Court, January Term, 1866, and re-argued at the General Term, November, 1866.

There survived him one sister, and several nephews and nieces, the children of two other sisters who had died in his lifetime, and also several grand-children of these deceased sisters, among whom are the two appellants, who are children of a daughter of one of these deceased sisters. The mother of the appellants survived her mother, but died in the lifetime of the intestate leaving no other children. The appellants claim to be entitled to represent their maternal grandmother, the intestate's sister, in the distribution of his estate, and to take in that distribution the share which their mother would have taken if she had survived the intestate. This claim was rejected in the probate court; and that decision having been affirmed, *pro forma*, in the county court, it is now brought here for revision on exceptions.

The statute declares that the personal estate of an intestate shall be distributed in the same proportions, and to the same persons, and for the same purposes, as is prescribed for the descent and disposition of real estate. (Gen. Stat., p. 385, § 1, subd. 6.) In the chapter of the General Statutes (p. 414, ch. 56,) relating to the title to real estate by descent, provision is made for the share which the widow of an intestate who dies leaving no issue is entitled to take in his estate, and it is declared that " the remaining part of the estate shall descend in the same manner as the whole would if no widow had survived." The word " *issue*," as applied in the descent of estates, refers to lawful lineal descendants of the ancestor. (Gen. Stat., p. 54, § 7; p. 418, § 19.) The fourth and fifth canons of descent in the statute now in force relating to title to real estate by descent (Gen. Stat., p. 414, § 1,) are as follows, viz:

" *Fourth.* If he " (the intestate,) " shall leave no issue, nor widow, nor father, his estate shall descend, in equal shares, to his brothers and sisters, *and to the legal* representatives of any deceased brother or sister; and if his mother be living, she shall have the same share as a brother or sister."

" *Fifth.* If none of the relatives above named shall survive the deceased person, his estate shall descend, in equal shares, to the next of kin in equal degree; but no person shall be entitled, by right of representation, to the shares of such next of kin who shall have died."

The controversy in this case relates only to the distribution of the remainder of the estate of the intestate after providing for the share of his widow ; and, in respect to this remainder, the case is to be treated as standing on the same footing on which it would have stood if he had left no widow. It is a case which falls within the express terms of the fourth canon of descent above referred to ; and the question is whether grand-children of a deceased sister of the intestate are entitled to stand in her place and right in the distribution of his estate, and share in it as her " legal representatives," their mother having died in his lifetime.

It is well said by Doctor Taylor in his Elements of the Civil Law (4th Lond. Edit., 1828, p. 537,) that the succession into the estates of intestates is one of the most uncertain points of law, because, first, there are not found perhaps two nations upon earth that have fixed upon the same method of conveyance, and, secondly, because there is scarce one but what has, at sometime or other, differed even from itself. Succession is a civil and not a natural right, and the rules by which it is regulated vary in almost every State or country. In England, those rules were dependent almost wholly on feudal principles, and the right of primogeniture, and the distinction between real and personal estate. Though these rules formed the model from which our own laws of succession were constructed, they were adopted only so far as they were in harmony with the customs of our people and the spirit of our institutions ; and it is manifest from a review of the changes in our legislation on this subject that the canons of descent now in force were intended to provide regulations which were just and clear, and possessed the merit of unity of principle, and were of easy application, and which should form a complete and independent system in this State.

The first statute law which was enacted in this State, on the subject of the distribution of the real and personal estate of intestates, was passed in 1779, (Slade's Vermont State Papers, p. 342-3.) It directed that, on failure of lineal heirs, the estate should be distributed to the next of kin of the intestate in equal degree, " *and those who legally represent them,*" with the limitation that " *no representatives should be admitted among collateral after brother's and sister's*

*children.*" This statute was superseded by the act passed March 8th, 1787, (Statues of Vermont, Haswell's edit., p. 57, *et seq.,*) which introduced various changes in the manner of making the distribution, and distinctly recognized representation in the collateral line without any expressed limitation or restriction. In the revision of the statutes in 1797, this act of 1787 gave place to a new act on the same subject, which was itself superseded by the probate act passed in 1821. The act of 1797 (1 Tolman's Comp. Laws of Vermont, p. 130, § 27,) and the act of 1821, (Slade's Comp. Laws of Vermont, p. 348, § 75,) each allowed representation in the collateral line, with a proviso that " no person should be admitted as a legal representative of collaterals beyond the degree of brother's and sister's children." The act of 1821 remained in force from the time it went into effect as a law up to the time when the statute now in force was enacted as a part of the Revised Statutes of 1839.

The right of representation invests the representative with the place, degree and rights of the person represented. It was recognized both in the civil and common law as existing *ad infinitum* in the direct descending line ; but the civil law, previous to the time of the Emperor Justinian, admitted it in no case among collaterals, (Institutes of Justinian, Lib. III., Tit. I., § 6, and notes on *Lib.* III. in edition by Cooper.) The nature of representation is well illustrated by Doctor Taylor, in his elements of the Civil Law, (4th edit., London, 1828, p. 537, *et seq.,*) in the following statement :—" The grandchildren, &c., of Sempronius, by a son that is gone, stand to Sempronius in the place of that son. They would have had their shares *through* that father, if he had lived, and represent him therefore, or succeed to his rights, now he is removed. And hence, because *many* children may succeed into *one* father's rights, it follows that the *Jus Representationis*, which transmits the estate of Sempronius to .his immediate descendants, shall undergo· a considerable alteration in those descents or generations that follow after. Though Sempronius may be represented by any number of children indifferently, and cut into so many shares accordingly, yet will each of these children be represented by their whole families ; not by so many distinct heads of children as Sempronius was, but by all of their children collec-

tively, (let their number be what it will,) laying, as it were, their heads together to form one common stock. For all those grandchildren, *gregatim*, have that right in common, not separate to each, which their father had to himself. And this is called *successio in stirpes*; the other, when all share alike, *in capita*. The 118th Novel of Justinian allowed, among collaterals, the privilege of representation to the sons and daughters of brothers and sisters, when called to the inheritance with their uncles and aunts, but no farther. This limitation or restriction upon representation among collaterals was adopted in the English statute of distribution of 22 & 23, Car. 2, ch. 10; and the same limitation or restriction contained in our acts of 1779, 1797, and 1821, above mentioned, may be referred to the same origin.

No other rule of succession but that *per stirpes*, or by representation was known to the common law, and the Jewish succession was directed in the same manner. 2 Black. Com. 517, 217. In remote times, this rule was occasionally the subject of fierce controversy; and it was more slowly introduced into the collateral than into the descending line. King John, who usurped the crown from his nephew, Arthur, the only son of a deceased elder brother, (*anno* 1199,) endeavored wholly to abolish the right of representation, and the doubt in respect to the existence of this right in the collateral line gave rise to the disputes between the houses of York and Lancaster in respect to the inheritance of the crown on the abdication of Richard the Second, (*anno* 1399;) but, since the time of the successor of King John,—now a period of about six hundred and fifty years,—the right of representation has been recognized as firmly settled and indisputable. It is said by Sir Edward Coke that " whensoever the father, if he had lived, should have inherited, his lineal heir by right of representation shall inherit before any other, though another be, *jure propinquitatis*, nearer of blood." 1 Coke Littleton, 10 *b*. Lord HALE states the third general rule directing the course of descents, " as they stand here in England," as follows : " Thirdly, that all the descendants from such a person as by the laws of England might have been heir to another *hold the same right by representation* as that common root from whence they are derived. And,

therefore, 1st, they are in law in the same right of worthiness and proximity of blood as their root, *that might have been heir*, was, in case he had been living.    *    *    So through all the degrees of suc-cession, *by the right of representation, the right of proximity is transfer-red from the root to the branches*, and gives them the same preference as the next and worthiest of blood. 2dly. This right transferred by representation, is infinite and unlimited, in the degrees of those that descend from the represented. For *filius*, the son, *nepos*, the grand-son, *abnepos*, the great-grand-son, and so *in infinitum* enjoy the same privilege of representation as those from whom they derive their pedigree had, whether it be in descents lineal or transversal." 2 Hale's Hist. of the Common Law, (5th edit.) p. 118 ; 3 Cruise's Dig , Title 29, Ch. 3, §§ 26, 29. In an Essay entitled " *Case upon the Statute for Distribution*," attributed to Chancellor WYTHE, and bound up with the volume of Virginia Reports, called Wythe's Reports, (Richmond, 1796,) the limitation upon representation in the collateral line to brothers' and sisters' children is referred to, and it is said (p. 7,) that " if these restrictive words had not been inserted, descendants of collateral kindred more remote than their children would have legally represented them," and that " representatives of nearest kindred may be branched into children, grand-children, great grand-children, &c." Judge REEVE, in his Treatise on Descents, (New York, 1825,) after referring to the statutes of the several states limiting representation in the collateral line, (p. 375, *et seq.*) says, (p. 383,) that it is peculiar to Delaware that the statute which limits representation in the collateral line extends it to brothers' and sisters' grand-children ; whereas in every other state which has a limiting clause in its statute of descents, representation extends no farther than to brothers' and sisters' children ; and he adds : " In the states which have no limiting clause, representation is continued on *ad infinitum* in the collateral, as it is in all the states in the descend-ing line." It is established beyond controversy by these authorities, that, at common law, there was no restriction or limitation upon representation in the collateral line, when called or admitted to the succession, and that the rule limiting representation among collate-rals to brothers' and sisters' children was created by, and derived all

of its force from, statute enactments. In the existing statute of this state, which was first enacted in 1839, this limitation upon representation in the collateral line, when brothers and sisters, and the legal representatives of a deceased brother or sister were called to the succession, was omitted; and the only restriction upon representation in the collateral line is that contained in the fifth canon, which provides that "if none of the relatives above named," (that is to say, no issue, widow, father, brothers, sisters, nor mother,) " shall survive the deceased person, his estate shall descend in equal shares, to the next of kin in equal degree; but *no person shall be entitled by right of representation to the shares of such next of kin who shall have died.*" This canon provides for a distribution in the contingency named to the next of kin in equal degree " in equal shares" or *per capita;* and it is only in the case of such a distribution that representation of the next of kin who may have died is excluded. But the distribution provided for by the fourth canon is a distribution *per stirpes,* or by the roots, and that canon contains no limitation or restriction upon representation. The expression of this exclusion of representation in the one case, and the omission to express it in the other, show that the framers of the statute intended no other limitation or restriction upon representation except that which is expressed in the fifth canon.

The case now in hand falls within the express terms of the fourth canon, and if the appellants are " legal representatives " of their maternal grand-mother, who was the sister of the intestate,—she as well as their mother having died in his life-time,—then they are entitled, under the provisions of this canon, to share in the distribution of his estate. In the first canon, contained in the same section of the statute, it is provided that the estate of an intestate shall descend " first, in equal shares to his children, *or the legal representatives of deceased children.*" It is admitted that in the direct descending line, the right of representation is unlimited. In *Rowland* v. *Gorsuch,* 2. Cox's Cases in Chancery, 187, the Master of the Rolls (Sir R. P. Arden, afterwards Lord ALVAULEY,) in defining the term " representatives " when used in a bequest of personal estate to first cousins, says:—" We all know that, in the meaning of the statute of distributions, descendants *ad infinitum* are representatives of the persons

who, if alive, would be next of kin of the intestate." It is not questioned by the appellees that the mother of the appellants, who was the child of a deceased sister of the intestate would have been, if living, a legal representative of her mother, and it is difficult to suggest any reason why, now that she is dead, the appellants should not, as her children, stand in her place, and be equally the representatives of her mother. We think that the term "legal representatives" has the same meaning when used in the fourth canon which it confessedly has in the first canon, and that it should receive the same interpretation in the one case as in the other; and we are satisfied that the omission in the existing statute of the proviso contained in the acts of 1779, 1797 and 1821, by which the right of representation among collaterals in the case provided for in the fourth canon was restricted, was purposely made, so that the descent to the collateral relatives named in that canon should be placed on the same footing with the descent to lineal heirs. In *Hatch* v. *Hatch, admr.*, 21 Vt., 450, this view of the statute was very clearly intimated, although it was not the point of the decision, and the same view of the statute was repeated in *Moore, et al.* v. *Estate of Moore*, 35 Vt., 98.

But it is claimed by the appellees that if the grand-children of collaterals could be in any case their representatives, the appellants could not be such representatives in *this* case, because their maternal grand-mother died in the life-time of the intestate leaving children living, who then became her representatives, and that when a person dies his representation is fixed, and cannot afterwards be changed by the substitution of new representatives. In other words, it is claimed that the appellants are not the representatives of their grand-mother, but are the representatives of one of her representatives. In support of this proposition, we are referred to the case of *Brown* v. *Lawrence*, 3 Cush. 390, in which SHAW, C. J., says, (p. 399,) that "it is only when a son or daughter *dies before the father*, leaving children, that such children are *heirs* of their grand-father." This expression refers to *heirship*, and not to *representation*, and is but a mode of stating the proposition that when a son or daughter dies after their father, the son or daughter, and not their children, are the heirs of their father,

24

—the descent being cast on the father's death. Representation and heirship, though they may produce the same result, are not the same thing; and it is not necessary that a person should be the *heir* of another in order to be his *representative*. Heirship is the result, while representation is but a process through which that result is produced. Representation is not predicated of the person dying seized, but of the next line of takers from him; and the very nature of the right implies that those should be considered as the representatives of a deceased person who would have inherited from him if he had died seized of the estate at the time when the descent was cast. In other words, those should be considered as the legal representatives of the maternal grand-mother of the appellants who would have inherited the estate from her if she had died when her brother, the intestate, did; and the inquiry is, who were entitled to represent her at the time of the death of her brother, the intestate,—for that was the time when the descent was cast,—and not, who were her representatives at the time of her own death. We do not question any principle decided in the case of *Brown* v. *Lawrence, ubi supra;* but we think that Professor Washburn, in his treatise on the Law of Real Property, (vol. 2, p. 413–14, first edit.,) has inadvertently fallen into an error in the application of that case by omitting to distinguish between heirship and representation,—which are as distinct as a process and its result, and should not be regarded as equivalent terms. We regard the appellants as being, by representation through their mother and maternal grand-mother, heirs of the intestate, even though they may not have been the heirs of their maternal grand-mother at the time of her death.

The judgment of the county court is reversed, and judgment is rendered that the decree of the probate court be vacated and annulled, and that the appellants are entitled as the legal representatives of their maternal grand-mother, who was the sister of the intestate, to inherit the share in the distribution of his estate which their mother would have received if she had survived the intestate; and this judgment is to be certified to the probate court, to the end that the estate of the intestate may be distributed in accordance therewith.