ALEXANDER P. HODGES ET AL.

v.

GEORGE W. PHELPS ET AL,

GRAND ISLE COUNTY, 1893.

Before: ROSS, CH. J., TAFT, AND ROWELL, JJ.

*Devise of land subject to payment of legacy. Surrender of land. Accepting conveyance of land. Interest on legacy. Decree.*

1. Certain land was devised to W., charged with the payment of three annuities, and upon the decease of the annuitants, with specific legacies to their heirs. The will provided that W. might discharge himself from the payment of the annuities and legacies by surrendering the land to the annuitants or their heirs, and he did quit-claim the premises to the annuitants. *Held*, that the land was thereby discharged from the annuities but not from the legacies.

2. At the death of the annuitants, or either of them, a specified sum was devised "to their and to the heirs of each." *Held*, that the legacies should be divided among the heirs of each annuitant *per capita* and not *per stirpes*.

3. In 1884 two of the annuitants deceased and P., who had become the owner of the premises through conveyance from the annuitants, quit-claimed the premises to the heirs of the deceased annuitants, who are the defendants in this suit and were the owners of the land at the time the suit was brought. The will provided that the legacies should be paid by the owner or occupant of the land. The deed recited the recent death of the annuitants, and that the legacies payable at the death of each were unpaid; was conditioned that the land should "still stand chargeable with the

payment of said legacies as provided by said will," and declared that by agreement of the parties the grantor was to be released from all liability in respect thereto.   *Held*, that by accepting this deed and occupying the premises under it, the defendants became personally liable for the payment of the legacy due the heirs of the third annuitant upon her decease in 1888, irrespective of the value of the land.

4.   Interest begins to run from the decease of the annuitant.

5.   Inasmuch as the bill is not drawn with a view to a decree *in personam*, and the value of the premises is more than the amount to which the orators are entitled, it is directed that a decree of foreclosure be entered in the common form.

Bill to enforce the payment of a legacy against certain lands.   Heard at the August term, 1891, upon bill and answer.   TYLER, chancellor, decreed for the orators.   Both parties appeal.   The opinion states the case.

*T. E. Wales* for the orators.

By accepting the deed from Mrs. Platt the defendants became personally liable for the payment of the legacy in suit. *Hill* v. *Sharp*, Thom. Cases 188; *Glan* v. *Fisher*, 6 John. Ch. 33, (10 Am. Dec. 310) ; *Larkin* v. *Mann*, 53 Barb. 267 ; *Cole* v. *Cole*, 53 Barb. 607 ;  *Re Phelps' Will*, 56 Vt. 661 ; *Pickering* v. *Pickering*, 15 N. H. 281.

*A. G. Whittemore* for the defendants.

The heirs of each annuitant would take *per stirpes*.   Sch. Wills, s. 538 ; 539 ; *Balcom* v. *Haynes*, 14 Allen 204 ;  *Osborn's Appeal*, 104 Penn. St. 637 ; *Cook* v. *Catlin*, 25 Conn. 387 ; *Shepard Heirs* v. *Shepard's Estate*, 60 Vt. 109 ; *Gaines* v. *Strong's Estate*, 40 Vt. 354 ; *Bronson* v. *Phelps' Estate*, 58 Vt. 612.

The opinion of the court was delivered by

ROWELL, J.   Timothy P. Phelps, who died on August 25, 1864, devised to George Whittemore for life that part of his

home farm lying in Colchester, "subject to the charges and the payment of the sums " mentioned in the will, with remainder over of an undivided half thereof to the children of the said George born in lawful wedlock, if any such there were, or to their heirs, the title to vest on the death of the said George ; and he made his brother, Asaph Phelps, and his sister, Marcia Hall, and his sister, Laura Roberts, during her life, residuary devisees and legatees, with remainder over of Laura's share to Asaph and Marcia. He specifically charged upon the land a life annuity of $100 to his brother Asaph, and the like to each of his said sisters, to be paid to them by the said Whittemore or by " the legal owner or occupant" of the land. At the death of the annuitants or any of them, he gave "to their and to the heirs of each the sum of $1,600 each," making $4,800 in all, to be paid to them in the same manner as the annuities were to be paid, and in like manner to constitute a charge upon the land. The will provided that it should be at the option of Whittemore to pay said annuities and legacies or to surrender the land to the annuitants or their heirs, and if he elected to surrender, then the land was devised to the annuitants and their heirs equally, and Whittemore was released from the payment of the annuities and the legacies.

On Nov. 11, 1867, Whittemore and one Barnum, who had become a joint owner with Whittemore, quit-claimed the premises to the annuitants, their heirs and assigns, in consideration that they "do release and discharge the said Whittemore from all personal liability to perform or pay any and all the conditions, charges and annuities " imposed and charged thereon by said will. On the 22d of said November, the annuitants quit-claimed the premises to said Barnum, and their deed purported to discharge the land and Whittemore and Barnum from the further payment of all "annuities" charged thereon by said will, due or to become due to them or any of them, or to their or any of their

heirs; but it did not purport to discharge the land from the legacies. Barnum mortgaged to Platt, who foreclosed and obtained title, and under his will the title to all but a small piece that he sold off came to and vested in his widow, who, on March 27, 1884, quit-claimed to the defendants and Wallace P. Hall, who subsequently conveyed his interest to Jerome P. Hall, one of the defendants, and the defendants are now the owners of the land. Mrs. Platt's deed recites the giving of said annuities and legacies, that they were made a charge upon the land to be paid by the legal owner and occupant thereof, which she had come to be, that Asaph and Marcia had recently died, and that the legacies "payable at the death of each" were due and unpaid, and it is conditioned that the land "shall still stand chargeable with the payment of said legacies as provided in said will," and declares that, by agreement of the parties, Mrs. Platt, her heirs, executors and administrators, are discharged and forever released from the payment thereof.

Laura Roberts died on Dec. 26, 1888, leaving no heirs but nephews and nieces, of whom there are fourteen, namely, seven of the orators, the six defendants, and the said Wallace P. Hall. Said orators are the children and only heirs of Clarissa Hodges, deceased, a sister of the said Laura's, and the defendants, except Jerome P. Hall, are the children and only heirs of Asaph Phelps, and Jerome P. Hall and Wallace P. Hall are the children and only heirs of Marcia Hall, and Wallace has conveyed to Jerome all his interest in the legacy given to his mother.

The orators seek to recover one half of the legacy given to the heirs of Mrs. Roberts, with the interest thereon, and pray that the defendants be decreed to pay the same to them, and in default thereof, that a trustee be appointed to sell the land to satisfy the decree, and for general relief.

The defendants answered, alleging among other things, that the present value of the land does not exceed $2,000,

and claiming that it has been and is released and discharged from the payment of said legacies; but if not, that in the circumstances, neither they nor the land are chargeable with only one third of the present value of one legacy, which they allege to be one ninth of the value of the land, to be ascertained.

The case was heard on bill and answer, and a decree was entered that the orators were entitled to $800, it being one half of the legacy given to the heirs of Mrs. Roberts; that the legacies are a charge upon the land; and that unless the defendants paid said sum to the orators, with the interest thereon, a trustee should be appointed to sell enough of the land to pay the same and the costs, provided the land is worth as much as the amount of the three legacies, but if not, then to sell a proportionate part thereof, the value of that sold to bear the same ratio to the value of the whole that $800, with interest and costs, bear to the amount of all the legacies; and a personal decree against the defendants was denied. From this decree both parties appealed.

We think it was not the intention of the testator that the surrender of his estate to the annuitants by the life tenant should operate to discharge the land from the burden of the legacies, but only that it should release the tenant, for whom he seems to have had especial regard, as he was otherwise a large beneficiary under the will, from personal liability in the matter, that is, from the payment of the annuities and the legacies, as the will says. And this seems to have been the understanding, both of the tenant and of the annuitants, for the tenant's deed was given on that express consideration, and imports no other release, although it probably effectuated a discharge of the land from the burden of the annuities into whosoever hands it might thereafter pass, as the annuitants thereby got the same thing in another form, namely, the life use. But they took the land charged with the legacies, just as the life tenant had it, and

with the same liability to pay the legacies, for by the will the life tenant was to pay, " or the legal owner or occupant of the land," which the annuitants had come to be under that deed and the will, for by the will, if the life tenant surrendered to them, the land was devised to them and their heirs equally; and that they did not consider the land discharged from the legacies in their hands is further evidenced by their deed to Barnum, for they did not thereby undertake to discharge it therefrom, but only from the "annuities," due or to become due. Nor did the defendants when they took their deed from Mrs. Platt understand that the land had been discharged from the legacies, for that deed is expressly conditioned that it shall stand chargeable with the payment thereof as provided by the will. We think this long and uniform construction of the will by the parties in interest is in entire harmony with the intention of the testator, and we therefore adopt it in effectuation of that intention.

But how shall the legatees take, *per capita* or *per stirpes?* *Per capita*, clearly; for the rule is that a gift of personality to " heirs " merely, whether to one's own heirs or to the heirs of another, is primarily to be held to be to those who would be entitled to take under the statute of distributions, and to indicate, when there are no words to show the contrary, that they are to take in the same manner and in the same proportions as though the property had come to them as intestate estate of the person whose heirs they are called. *Daggett* v. *Slack*, 8 Met. 450; *Tillinghast* v. *Cook*, 9 Met. 143; *Houghton* v. *Kendall*, 7 Allen 72; *Brothers* v. *Cartwright*, 2 Jones' Eq. 113, (64 Am. Dec. 563). There are no words in this will to show that the testator used the word "heirs " in a sense different from that above indicated; hence he is presumed to have used it in that sense. Now Mrs. Roberts left no heirs but nephews and neices, therefore her intestate estate, according to *Hatch* v. *Hatch*, 21 Vt. 450, would be distributed to them under the fifth canon of de-

scent, which would give it to them in equal shares. R. L.
2,230, 2,234. Hence the orators take under the will one half
of the legacy in question. But are they entitled to the full
amount of it from the defendants if the land is not worth as
much as the sum of all the legacies?

It is settled law that a devisee who accepts a devise
charged with the payment of a legacy, thereby becomes per-
sonally liable to pay the legacy, although the land is worth
less than the amount of the legacy. This liability is put upon
the ground of an implied promise arising from the fact of ac-
ceptance; for the doctrine is, that he who accepts a benefit
under a will must conform to all its provisions and re-
nounce every right inconsistent with them. *Brown* v. *Knapp*,
79 N. Y. 136; *Glen* v. *Fisher*, 6 Johns. Ch. 33; *Wiggin*
v. *Wiggin*, 43 N. H. 561, (80 Am. Dec. 192); *Porter* v.
*Jackson*, 95 Ind. 210, (48 Am. Rep. 704). But when the de-
visee conveys the land subject to the charge, the vendee
stands in respect of personal liability much like one who
purchases mortgaged premises subject to the mortgage, who
does not become personally liable for the mortgage debt
without a contract of assumption, evidenced in some way.
But no particular form of words is necessary to create such
liability; any words that clearly import the assumption of
such obligation are sufficient to impose it, and the intention
will be sought from the whole instrument, if the promise is
to be gathered from a writing. The statement in a deed
that the land is conveyed subject to mortgage, does not of
itself make the grantee personally liable for the payment of
the mortgage debt. But if the statement is that the grantee
assumes, or agrees to pay, the mortgage, then he becomes
personally liable. So, by many authorities certainly, when
the purchaser agrees to pay a particular sum as purchase-
money, and on the execution of the contract of purchase the
amount of the mortgage is deducted from the consideration
and the land conveyed subject to the mortgage, the pur-

chaser is bound to pay the mortgage debt, whether he so
agreed in express words or not, for this obligation results
from the very nature of the transaction. *Heid* v. *Vreeland*,
30 N. J. Eq. 591; 1 Jones, Mort. s. 749; Note to *Klap-
worth* v. *Dressler*, 78 Am. Dec. 83.

As between the defendants and their grantor, Mrs. Platt,
it is undoubtedly for them to discharge the legacies, first,
because their deed is a quit-claim deed, and when one pur-
chases an equity of redemption by a deed without covenants,
he takes the estate charged with the payment of incum-
brances, it being presumed in such case, nothing to the con-
trary appearing, that the amount paid was the price less in-
cumbrances, which are for the purchaser to discharge.
*Guernsey* v. *Kendall*, 55 Vt. 201; 1 Jones, Mort. s. 736;
and second, because said deed expressly provides " by the
agreement of the parties " thereto, that Mrs. Platt, her heirs,
executors, and administrators, " are hereby discharged and
forever released from the payment of the aforesaid legacies."

Now the will not only charges the legacies upon the land,
but it expressly directs that the legal owner thereof shall pay
them. Hence, by the very terms of the will, when one be-
comes such owner he thereby becomes liable to pay, irre-
spective of the value of the land, if the legacies have taken
effect, for such is the charter by which he holds, and tak-
ing title under it with notice, as the defendants did, is an
implied assent to those terms, and a promise to pay in ac-
cordance therewith. It is evident that this is as the testator
intended it should be, for it is manifest that his purpose was
to charge these legacies upon the land exclusively, in exon-
eration of his personal estate, for when he made his will, all
the persons whose " heirs " were to take those legacies were
living, and he might well have contemplated that they would
long outlive him, as they all did, Mrs. Roberts more than
twenty-four years, and that in the meantime his personal es-
tate would be distributed to those entitled, leaving nothing

for the payment of the legacies thereout.   And besides, the defendant's deed says that the land " shall still stand chargeable with the payment of said legacies *as provided in said will*," and recites that it is provided in the will that they shall be paid by "the legal owner or occupant" of the premises, and it releases the grantor from such payment.   This language, in the circumstances, clearly imports an intention on the part of the defendants to assume the legacies, and an assumption of them, and a promise to pay them, " as provided in said will," and it precludes the idea of a mere imdemnity to the grantor.   It is true that the answer alleges that Mrs. Platt conveyed voluntarily, in compromise and settlement of a claim made solely by her grantees as heirs of Asaph Phelps and Marcia Hall to the legacies due them under the will as such heirs, and that neither Mrs. Roberts nor the orators were parties or privies to the transaction. But this does not alter the legal import of the deed, which is set out in full.

The orators, therefore, are entitled in equity to have and receive from the defendants the full amount due them under the will, irrespective of the present value of the land.

As to interest, the general rule is that legacies out of personal estate draw interest after one year from the testator's death.   This is taken from the practice in the ecclesiastical courts, where a year is given to the executor to collect the assets, and he cannot be called upon to pay before that time, because he is not supposed to know until then what fund there is to pay with.   In conformity to this practice, courts of equity have proceeded in the case of legacies out of personal estate.   But in the case of legacies charged on real estate only, with no day of payment fixed, Lord Redesdale says that interest is charged from the death of the testator or not at all.   *Pearson* v. *Pearson*, 1 Sch. & Lef. 10.   But of course the legacy in question does not carry interest from the death of the testator, for it was not then *in esse*, as you

might say. Nor is the general rule in respect of legacies out of personal estate applicable, for the reason of the rule is wanting. The legacy is given " at the decease" of Mrs. Roberts, and we think it became payable then, as said in defendants' deed as to the other legacies, and therefore carries interest from that time.

The bill does not seem to have been drawn with a view of obtaining a decree *in personam* against the defendants, and it is not necessary for the orators to have such a decree if they could, for the land is undoubtedly worth enough to pay them in full.

The court below directed that a trustee be appointed to sell the land to pay the decree. This was well enough; but as the legacy is a lien on the land in the nature of an equitable mortgage, we think it more according to our practice to enter a decree of foreclosure in common form, and it is so ordered. Let the orators recover costs in this court and in the court below.

*Reversed and remanded.*