PETITION OF THOMAS E. KENYON *et al.* for an Opinion of the Court.

A., by the first clause of his will, devised and bequeathed his entire estate to B. and his heirs for and during the life of C., the son of A., in trust for C.

By the second clause A. gave and bequeathed after the death of C. "all the property affected by the above trust which shall then remain, to my own right heirs."

*Held*, that under the first clause B., the trustee, took an estate for the life of C.

*Held*, further, that under the second clause C., who was sole heir of A. at A.'s death, took a vested remainder in fee.

CASE STATED for an opinion of the court under Pub. Stat. R. I. cap. 192, § 23.

The last will and testament of George C. Kenyon, late of East Greenwich, duly proven, is as follows: —

I, George C. Kenyon, of East Greenwich, in the county of Kent and State of Rhode Island, do make and publish this my last will and testament in manner following: —

*First.* After the payment of my just debts and the expenses of settling my estate, I give and bequeath all my estate, both real and personal, of whatever kind or nature, of which I shall die possessed, to Simeon F. Perry, of Westerly, in the county of Washington and State of Rhode Island, and his heirs, to have and to hold for and during the natural life of my son, Daniel C. Kenyon, in trust

to collect the rents and profits of the property hereby devised, and, after the payment of all taxes and assessments thereon and for necessary repairs thereto, to pay over the balance to my said son, Daniel C. Kenyon. And I further authorize and empower said trustee, whenever in his judgment it shall be necessary or proper to raise money for the purpose of paying off incumbrances on said property or for making repairs, additions, or improvements thereto or to any part thereof, or if in his judgment some other investment shall be more advantageous or profitable, or whenever he shall deem the income or profits arising from said property insufficient to secure the necessary support and sustenance of the said Daniel C. Kenyon or for his advancement in life, to sell or mortgage, or lease for term of years, with the written consent of the said Daniel C. Kenyon, the above devised property or any part thereof, for the best prices that can be obtained therefor; and the duly executed deed or conveyance of said trustee, with the written consent of the said Daniel C. Kenyon attached thereto or incorporated therewith, shall in all cases vest a clear and complete title in the purchaser thereof, free from the provisions of this trust; and it shall be the duty of said trustee, with the written consent of said Daniel C. Kenyon, to invest the proceeds of such sales not necessary for the payment of incumbrances on said property or for repairs thereof, or for the necessary support and advancement of said Daniel C. Kenyon, in suitable improvements upon the remaining property, or in other secure and productive property; and all property purchased shall be held by the trustee under the same title and conditions and with the same powers and privileges as the property originally devised to him; and for such sums as said trustee shall expend in the sustenance, support, and advancement of the said Daniel C. Kenyon, the receipt of said Daniel C. Kenyon shall be a sufficient discharge for said trustee, *Provided*, however, that if the said Simeon F. Perry shall die in my lifetime, and no other trustee shall have been duly appointed by me in my lifetime, the above bequest shall then vest in the person who at the time of my death shall be or shall be acting as town clerk of East Greenwich aforesaid and his heirs, until a trustee can be appointed as hereinafter provided, except that the said town clerk or his heirs shall have no power to sell or otherwise convey any of the property

hereby devised. And *provided*, further, that if the contingency mentioned in the last clause shall happen, or if the said Simeon F. Perry or any other trustee shall die during the continuance of this trust, or shall become incapable of fulfilling the duties thereof, or shall refuse to perform them, I hereby authorize and empower the Supreme Court of this State, sitting in any county thereof, to appoint another trustee; and upon such appointment the above bequest, as regards the person or the heirs of the person so deceased or superseded, shall cease and determine, and shall vest in full force with the same powers and privileges and subject to the same conditions, in the person so appointed.

*Second.* After the decease of said Daniel C. Kenyon, I give and bequeath all the property affected by the above trust, which shall then remain, to my own right heirs.

*Third.* I appoint said Simeon F. Perry executor of this my last will and testament, and hereby revoke all former wills and testaments by me made.

In testimony whereof I have hereunto set my hand, this thirty-first of the seventh month, A. D. 1863.

GEORGE C. KENYON.

Signed, published, and declared by George C. Kenyon as and for his last will and testament, in our presence, who have at his request, in his presence and in the presence of each other, set our names as witnesses.

EBENEZER SLOCUM.

DAVID C. POTTER.

JOSEPH W. CONGDON.

After the death of Daniel C. Kenyon, childless and intestate, the administrator of his estate, and the then heirs at law of George C. Kenyon, presented this petition asking the court to determine what disposition was made, by the will of the latter, of the remainder after the trustee's estate for the life of Daniel C. Kenyon.

*Charles J. Arms & Edwin Metcalf*, for the administrator on the estate of Daniel C. Kenyon.

By the will of George C. Kenyon, Simeon F. Perry took an estate in fee simple for the life of Daniel C. Kenyon, and the latter took an estate in remainder in fee simple expectant upon the determination of the prior life estate, — both estates vesting at the

moment of the decease of the testator, the one in possession, the other in remainder.

Under this construction of the will, the estate of the said George C. Kenyon now remaining is assets in the hands of the administrator of Daniel C. Kenyon, for the payment of the debts of the said Daniel, under our statute for the distribution of the estates of deceased persons. Pub. Stat. R. I. cap. 189, §§ 1, 2; *Whitney* v. *Whitney*, 14 Mass. 88; *Leverett* v. *Armstrong*, 15 Mass. 26; *Williman* v. *Holmes*, 4 Rich. Eq. 475.

The testator, by the second clause of his will, gave his entire estate to his "own right heirs," subject to the trusts created by the first clause in favor of his son Daniel. An heir is the one on whom the local law of descent casts the inheritance on the ancestor's death.

The testator having thus used an unambiguous legal phrase, the meaning of which has been judicially settled, and there being nothing in the context of the will to show that he intended to use the words of that phrase in any other than their ordinary, primary, and legal sense, the court is bound to apply them in that sense, if possible. 1 Redfield on Wills, 465; Hobart, 33 *b*, marginal note; 2 Jarman on Wills, 60 n.; Wigram on Wills, ed. 1872, 58, First Proposition; *Ib.* 66, Second Proposition; *Ib.* 101, n.; *Bagshaw* v. *Spencer*, 2 Atk. 570, 576; *Hodgson* v. *Ambrose*, Doug. 337, 341; *Buck* v. *Nurton*, 1 Bos. & Pul. 53, 57; *Thelluson* v. *Woodford*, 4 Ves. Jun. 227, 329; *Church* v. *Mundy*, 15 Ves. Jun. 396, 406; *Driver* v. *Frank*, 3 M. & S. 25; *Doe dem. Flick* v. *Dring,* 2 M. & S. 448; *Attorney-General* v. *Grote*, 3 Meriv. 316; *Jesson* v. *Wright*, 2 Bligh. 1, 56; *Wright* v. *Denn*, 10 Wheat. 204, 239; *Shore* v. *Wilson*, 9 Cl. & Fin. 355, 512; *Hone* v. *Van Schaick*, 3 Barb. Ch. 488; *Brearly* v. *Brearly*, 9 N. J. Eq. 21, 24; *Walker* v. *Tipping*, 9 Hare, 800; *Hicks* v. *Sallitt*, 3 De G., M. & G. 782; *Lowe* v. *Thomas*, 5 De G., M. & G. 315; *Moon* v. *Stone*, 19 Gratt. 130, 327; *Porter's Appeal*, 94 Pa. St. 332, 336; *Low* v. *Smith*, 2 Jur. N. S. 344; *Smith* v. *Butcher*, L. R. 10 Ch. Div. 113; *Leach* v. *Jay*, L. R. 6 Ch. Div. 496; *Abbott* v. *Middleton*, 7 H. L. 68; *Grey* v. *Pearson*, 6 H. L. 61; *Roddy* v. *Fitzgerald*, *Ib.* 823; *Jenkins* v. *Hughes*, 8 H. L. 571; *Williamson* v. *Williamson*, 18 B. Mon.

329, 371; *Griswell's Appeal,* 41 Pa. St. 288; *Richardson* v. *Wheatland,* 7 Metc. 169; *Allen* v. *Craft,* 109 Ind. 476, 480; *Shimer* v. *Mann,* 99 Ind. 190; *Doe dem. Gallini* v. *Gallini,* 5 B. & Ad. 621; *Lees* v. *Mosley,* 1 Y. & C. 589; *Lord* v. *Bourne,* 63 Me. 368; *Loftus* v. *Stoney,* 17 Ir. Ch. 178; *Turner's Appeal,* 48 Mich. 369; *Mason* v. *Bailey,* 12 Central Reporter, 331; *Campbell* v. *Rawdon,* 18 N. Y. 412, 417; *Harvey* v. *Olmstead,* 1 N. Y. 483, 489; *Eddings* v. *Long,* 10 Ala. 203; *Baldwin* v. *Rogers,* 3 De G., M. & G. 649; *Markland* v. *Ivatt,* 20 Beav. 579.

If it be said that a gift in remainder of " all which shall then remain " of an estate given to one for life, with a qualified power of disposing of a part or of the entirety, must be contingent till it shall appear how much, if any, of the estate will then remain, the answer is that no amount of uncertainty that the estate will ever be enjoyed will render a remainder contingent.

The ultimate limitation is to the " heirs " of the testator, and it so happened that there was but one, *i. e.* Daniel C. Kenyon. However, as the word " heir," *nomen collectivum,* is always held to be interchangeable with " heirs," so, conversely, the larger term " heirs " is universally regarded as including the smaller term " heir." *Reading* v. *Rawstone,* 2 Ld. Raym. 829; *Pleydell* v. *Pleydell,* 1 P. Wms. 748; *Wilkinson* v. *Garrett,* 2 Coll. 643; *Stokes* v. *Van Wyck,* 83 Va. 724; *Durdant* v. *Burchet,* Skinner, 205, 207.

Again, it is no objection to the reading of the second clause of this will in its literal, ordinary, and legal sense that the right heir of the testator takes by name a life interest in the same estate by the terms of the first clause. " Nothing is more common than that an estate for life should be given to one to whom a remainder over in fee is afterwards devised." *Doe dem. Garner* v. *Lawson,* 3 East, 278.

It is somewhat less common that the tenant for life happens to be the sole heir, but he is not on that account excluded from taking under any limitation to the heirs. *Miller* v. *Eaton,* Cooper, 271, decided by Sir William Grant in 1815, is the only recorded case where the fact of the prior legatee being the sole " next of kin " of the testator at the time of his death was held to exclude him from taking the remainder under that designation. There is no

case where an "heir" has in similar circumstances been held to be incapacitated from taking by that description.

Below are cited in chronological order some of the leading cases which rule the point that no intent to defer the vesting of a remainder is to be inferred from the fact that the first taker is one of the class designated to take in remainder, or is himself the only one answering to the description of persons so to take.

In the following cases the tenant for life was *one of the class* to whom the remainder was limited : *Harrington* v. *Harte*, 1 Cox, 131 ; *Holloway* v. *Holloway*, 5 Ves. Jun. 399 ; *Doe dem. Garner* v. *Lawson*, 3 East, 278 ; *Dingley* v. *Dingley*, 5 Mass. 535 ; *Elmsley* v. *Young*, 2 Myl. & K. 82 ; *Jennings* v. *Newman*, 10 Sim. 219 ; *Withy* v. *Mangles*, 10 Cl. & F. 215 ; *Nicholson* v. *Wilson*, 14 Sim. 549 ; *Jenkins* v. *Gower*, 2 Coll. 537 ; *Ferguson* v. *Stuart's Ex'rs*, 14 Ohio, 140 ; *Seifferth* v. *Badham*, 9 Beav. 370 ; *Childs* v. *Russell*, 11 Metc. 16 ; *Wilkinson* v. *Garrett*, 2 Coll. 643 ; *Say* v. *Creed*, 5 Hare, 580 ; *Bradley* v. *Barlow*, 5 Hare, 589 ; *Brown* v. *Lawrence*, 3 Cush. 390 ; *Baker* v. *Gibson*, 12 Beav. 101 ; *Philps* v. *Evans*, 4 De G. & Sm. 188 ; *Williman* v. *Holmes*, 4 Rich. Eq. 475 ; *Gundry* v. *Pinniger*, 14 Beav. 94, and 1 De G., M. & G. 502 ; *Gold* v. *Judson*, 21 Conn. 616 ; *Aspden's Estate*, 2 Wall. Jun. 368 ; *Leah Passmore's Adm'r's Appeal*, 23 Pa. St. 381 ; *Starr* v. *Newberry*, 23 Beav. 436 ; *Newkirk* v. *Hawes*, 5 Jones Eq. 265 ; *Bullock* v. *Downes*, 9 H. L. 1 ; *In re Greenwood's Will*, 31 Law Journal, N. S. Equity, 119 ; *Smith* v. *Harrington*, 4 Allen, 566 ; *Abbott* v. *Bradstreet*, 3 Allen, 587 ; *Wiggins* v. *Blount*, 33 Ga. 409 ; *Michell* v. *Bridges*, 13 W. R. 200 ; *Riehle's Appeal*, 54 Pa. St. 97 ; *Buzby's Appeal*, 61 Pa. St. 111 ; *Rees* v. *Fraser*, 25 Grant Chancery, Upper Canada, 253 ; *Minot* v. *Tappan*, 122 Mass. 535 ; *Dove* v. *Torr*, 128 Mass. 38 ; *Mortimore* v. *Mortimore*, L. R. 4 App. Cas. 448 ; *Whall* v. *Converse*, 146 Mass. 345.

In the following cases the tenant for life was *the sole heir* or next of kin to take in remainder : *Doe dem. Bailey* v. *Pugh*, 3 Bro. P. C. Toml. Ed. 454, quoted in *Cholmondeley* v. *Clinton*, 2 Meriv. 347 ; *O'Keefe* v. *Jones*, 13 Ves. Jun. 412 ; *Doe* v. *Maxey*, 12 East, 596 ; *Cholmondeley* v. *Clinton*, 2 Meriv. 171, 347 ; *Pearce* v. *Vincent*, 2 Keen, 230 ; *Sterl* v. *Platel*, 5 Bing. N. C. 434 ; *Pilkington* v. *Spratt*, 5 B. & Ad. 731 ; *Clapton* v. *Balmer*, 10 Sim. 426,

440; *Smith* v. *Smith*, 12 Sim. 317; *Boydell* v. *Golightly*, 7 Jur. 53; *Urquhart* v. *Urquhart*, 13 Sim. 613; *Wrightson* v. *Macaulay*, 14 M. & W. 213; *Murphy* v. *Donegan*, 3 Jones & Lat. 534; *Ware* v. *Rowland*, 2 Phillips, 635; *Bird* v. *Luckie*, 8 Hare, 301; *Rawlinson* v. *Wass*, 9 Hare, 673; *In re Barber's Will*, 1 Sm. & G. 118; *Gorbell* v. *Davison*, 18 Beav. 556; *McIntyre* v. *Ramsey*, 23 Pa. St. 317; *Harris* v. *McLaran*, 30 Miss. 533; *Southgate* v. *Clinch*, 4 Jur. N. S. 428; *Lee* v. *Lee*, 1 Dr. & Sm. 85; *Harrison* v. *Harrison*, 28 Beav. 21; *In re Lang's Will*, 9 W. R. 589; *Rand* v. *Butler*, 48 Conn. 293; *Stokes* v. *Van Wyck*, 83 Va. 724.

*Cusack* v. *Rood*, 24 W. R. 391. Testator devised and bequeathed his real and personal estate to trustees upon certain trusts in favor of his wife and two daughters, and after their death upon trust to sell and convert into money the real and personal estate, and, as to the proceeds, "upon trust to pay, distribute, and divide the same between and among the person or persons who, under the statutes for the distribution of intestates' estates, would then be entitled thereto," etc. Jessel, M. R. It has been settled by authority that a gift to a person who may be even the testator's sole next of kin, and after his decease to the testator's next of kin, or to the persons who shall be then his next of kin, is a gift to the person or persons who, at the death of the testator, fill the character of next of kin. . . . The persons to take the proceeds of both real and personal estate are the same, and the case of *Bullock* v. *Downes*, 9 H. L. 1, must decide this case.

*William W. Blodgett, Samuel W. K. Allen & Albert R. Greene*, for the heirs at law of George C. Kenyon.

The provisions all clearly indicate that the testator never intended that Daniel C. Kenyon should have any interest of any character in this estate, except such as is given for his support in the first clause of the will. And he says: —

"Second. *After the decease* of the said Daniel C. Kenyon, I give and bequeath all the property affected by the above trust, which shall *then remain*, to my own right heirs."

This is a gift, *not at the time of the testator's death*, but *after* the death of Daniel C.; not of the property of which the testator died possessed, but of such of the property affected by the trust

created by the first clause of the will as shall remain after the death of Daniel C. Kenyon.

By force of this language it was not possible for any property bequeathed by the second clause of the will to vest at the death of the testator, and it could only, and did only, vest after the death of Daniel C.

It is a future interest, preceded by an estate of freehold created by the same will, limited to take effect after the expiration of such preceding estate, which is an *executory devise.* 2 Powell on Devise, cap. xiv. p. [237].

No precise form of words is necessary to create an executory devise. Any expression disclosing the intention will have that effect.

The intention of the testator is to be regarded, if clearly expressed, although he may be ignorant of technical language and may use it improperly. *Annable* v. *Patch*, 3 Pick. 360.

Where the language of the testator is capable of two legal constructions, that one will be applied which, from an observation of the whole will, it is evident was intended by the testator.

The rule as given in Jarman on Wills is, that where an estate is given to a *stranger* for life, or any other limited interest, then over to his next of kin, those who stand in that relation at the death of the testator will be entitled to take, whether living or not at the period when the devise over takes effect. 2 Jarman on Wills, 52.

But if there be a gift for life or in fee to persons who are themselves the *sole next of kin* of the testator at the time of his decease, the gift over must be considered as intended to refer to the persons answering the description of next of kin at the *death of the first taker.* 2 Jarman on Wills, 54, 55; *Pinkham* v. *Blair*, 57 N. H. 226; *Sears* v. *Russell*, 8 Gray, 86, 93, 94.

While the general rule of construction is stated to be, that a bequest or devise to " heirs " of a testator will be construed as referring to those who are such at the time of the testator's decease, the authorities all agree that this rule must give way to the *controlling rule* of *interpretation*, that the *intent* of the *testator* is to *govern*, if it does not conflict with the rules of law.

And the very purpose of an executory devise is to give effect

to the intent of the testator, when he may use language in the devise which a strict application of the rules of common law would defeat. *Sears* v. *Russell,* 8 Gray, 86, 93, 94.

Again, the rule is a consequence of the preference which the law gives to vested over contingent remainders. An executory devise is for the very purposes of carrying out the intent of the testator in those cases where a strict application of the rule would prevent.

Did the testator mean that his bounty should depend upon the happening of a particular event, or did he mean to make the gift absolutely, and merely postpone the enjoyment of it to some period which he supposed convenient? is the question in all cases, says Chief Justice Parker in *Shattuck* v. *Steadman,* 2 Pick. 468–470.

Clearly, in the case at bar, the testator meant that his bounty should depend upon some estate being left after the decease of Daniel C. Kenyon. He intended the trustee, in his discretion, to use the entire estate for the sustenance, support, and advancement in life of his son, Daniel C., or to invest the same in some other property, taking the risks attendant thereon. If, perchance, after the exercise of the powers, and after the decease of Daniel C., there is anything remaining, he then gives that to his own right heirs. Then, and not until then, does the estate vest.

*Providence, August* 6, 1890. DURFEE, C. J. The case stated shows that George C. Kenyon died at East Greenwich in 1874, leaving real and personal estate, and one son, Daniel C. Kenyon, his only heir at law. He left a will, by the first clause of which he devised and bequeathed all the residue of his estate, after payment of his debts, " to Simeon F. Perry . . . and his heirs, to have and to hold for and during the natural life of my son, Daniel C. Kenyon," in trust for said Daniel, with power to sell, mortgage, or lease the same, with said Daniel's written consent, for the purpose of paying off incumbrances, making repairs, improving the investment, or raising money for the necessary support or for the advancement of said Daniel. The second clause is as follows, to wit : " After the decease of said Daniel C. Kenyon, I give and bequeath all the property affected by the above trust, which shall then remain, to my own right heirs." Daniel C. Kenyon died in 1887,

without issue.  The estate remaining is claimed on the one hand by persons who, if the testator had died childless, would have been, at the time of his death, and who are now, his sole heirs at law. On the other hand it is claimed by the administrator on the estate of Daniel C. Kenyon as said Daniel's estate, liable as such for the payment of his debts, his claim being that it vested in said Daniel, under said second clause, by way of remainder, at the death of the testator, said Daniel being the testator's only "right heir."  We are asked to say which of the two claims is right.

It is contended for the heirs at law that the estate could not pass under the second clause as a remainder, because it was given by the first clause to Simeon F. Perry in fee simple, after which there can be no remainder.  The second clause, it is argued, could only take effect by way of executory devise.  We are not convinced by this argument.  It is true that the residuary estate is given to Simeon F. Perry " and his heirs," but nevertheless it is only given to him and his heirs *for and during the natural life of Daniel C. Kenyon*, and in our opinion the devise, correctly interpreted, creates only an estate *pur autre vie, i. e.* for the life of said Daniel, the heirs of said Perry taking after him, if he had died before said Daniel, as special occupants.  *Carpenter* v. *Dunsmore*, 3 El. & B. 917; *Doe dem. Jeff* v. *Robinson*, 8 B. & C. 296; *Atkinson* v. *Baker*, 4 Term Rep. 229.  See, also, *Doe, lessee of Poor,* v. *Considine*, 6 Wall. 458, where an estate devised to a trustee and his heirs for objects terminating with lives in being, with remainder over, was held to be constructively only an estate *pur autre vie*, such an estate being sufficient for all the purposes of the trust.  We think there was nothing to prevent the estate from passing under said second clause by way of remainder.

It is contended for the heirs at law that the language of the first clause is such as shows an intent on the part of the testator to give to his son Daniel only an estate for life.  The first clause clearly shows an intent to put the estate, during the life of this son, in the trammels of a trust, but it does not in express terms restrict the son to the estate so put in trust, nor use any language which is necessarily inconsistent with his taking in remainder.  It is urged that the powers given to the trustee to dispose of the entire estate for the son's benefit, but not without the son's written

consent, would not have been given. so, if the testator had intended to have his son take not only the equitable life estate, but also the legal remainder. We do not think this is clear, since the powers, if not necessary, might be convenient, and would tend to give the trustee a restraining and protective influence. The great obstacle to the construction contended for by the heirs at law is, that the estate was given by the testator in remainder to his " own right heirs," and the son alone answered to that description at the testator's death. We are bound to hold that the words were used in their proper technical meaning until the contrary clearly appears.

The counsel for the heirs at law contends that Daniel could not have taken a vested remainder under the second clause, because the clause was not intended to take effect until after his death, being then intended to take effect in favor of the persons then answering to the description of the testator's right heirs; or, in other words, that the remainder was contingent until then, the persons entitled being previously undetermined. In support of this contention he directs attention particularly to the language of the second clause, which gives, after the decease of Daniel, not " the remainder of the estate," but " all the property affected by the above trust *which shall then remain.*" The view is not without force, but the precedents are against it. The estate given by the second clause does not vest in possession until after Daniel's death; but the question is, when did it vest in title or ownership? This question is to be decided in the light of the rule that the law favors vesting very strongly, and will not regard a remainder as contingent, in the absence of very decisive terms of contingency, unless the provisions or implications of the will clearly require it, and that words expressive of future time are to be referred to the vesting in possession, if they reasonably can be, rather than to the vesting in right. Jarman on Wills, 5th Amer. ed. 421 n.; *Cusack* v. *Rood,* 24 W. R. 391; *Bullock* v. *Downes,* 9 H. L. 1. " The words ' I give and bequeath ' in a testamentary paper," says Chief Justice Shaw in *Eldridge, Adm'r* v. *Eldridge, Executor,* 9 Cush. 516, 519, " import a benefit in point of right, to take effect upon the decease of the testator and the proof of his will, unless it is made in terms to depend on some contingency or condition precedent."

This remark applies pointedly to said second clause, as will clearly appear if we slightly alter the form without altering the sense, so that the clause shall read thus: " I give and bequeath all the property affected by the above trust, which shall remain after the decease of said Daniel C. Kenyon, to my own right heirs." The gift so expressed is clearly immediate, though how much will eventually pass by it is uncertain, to be ascertained only at the death of Daniel. The same uncertainty would exist if this were the form of the gift, to wit : I give to A. for life, " with power, in case the income is insufficient for his comfortable support, to sell and use the *corpus* or principal therefor, so far as required, and, after the death of A., to B. and his heirs ;" and yet, without doubt, the remainder under such a devise would vest immediately at the testator's decease ; it would vest subject to be devested either wholly or in part by the exercise of the power. The devise in either form is in effect the same, and so likewise is it, in our opinion, in legal construction, at least so far as the question of vesting is concerned. In *Surman* v. *Surman*, 5 Madd. 123, the gift was of personal property in this wise, to wit : " I give and bequeath the same to my wife for life or during widowhood, with power to use and appropriate the same as she thinks proper for her own benefit, or the maintenance of my nephew and daughter-in-law during minority ; and on her decease, I give and bequeath the same, *or so much of the same as shall then remain*, to said nephew and daughter-in-law ;" and the court held that, upon the marriage or death of the wife, the remainder of the capital unapplied was well limited to the nephew and daughter-in-law. In *Burleigh* v. *Clough*, 52 N. H. 267, the gift included real and personal estate, and was thus : " I give, devise, and bequeath to my wife, to her use and disposal during her natural life ; and *what is remaining at her decease undisposed of*, I give, devise, and bequeath to D. and his heirs." *Held*, that D. took a vested remainder subject to be devested by the execution of the power. These cases, in our opinion, are not distinguishable in point of principle from the case at bar. In *White* v. *Curtis*, 12 Gray, 54, it was decided that a devise in trust to apply the income, and if necessary the principal, to the support of the testator's sons for life, and after their death to divide the remainder among his grandchildren, gives each grandchild a

vested interest at the death of the testator.  See, also, *Ackerman* v. *Gorton*, 67 N. Y. 63.  Our conclusion is, that said second clause does not show clearly an intent on the part of the testator to have the property given thereby go, after the death of his son, to the persons then answering to the description of his own right heirs.

If the first and second clauses taken separately do not show such an intent, do they taken together show it?  We think there can be no doubt if, the will remaining otherwise the same, the gift for life were to some person other than the son, or to the son, he being one of several heirs at law, that the son would take at the death of the testator a vested remainder under said second clause, solely in the first case supposed, and together with his coheirs in the second.  The question then is, whether the fact that he is the sole heir at law is sufficient to exclude him by implication from taking under the second clause, and to carry the estate given thereby over until after his death to the persons then answering to the description of the testator's right heirs.  The case of *Miller* v. *Eaton*, Cooper, 271, decided A. D. 1815 by Sir William Grant, supports the affirmative of this question.  The cases of *Jones* v. *Colbeck*, 8 Ves. Jun. 37, A. D. 1802; *Butler* v. *Bushnell*, 3 Myl. & K. 232, A. D. 1834; and *Briden* v. *Hewlett*, 2 Myl. & K. 90, A. D. 1841, likewise go some way in support of it, but in them there were other indications of intent which influenced the decision.  Mr. Jarman remarks that *Miller* v. *Eaton* is the only case where the fact of the prior legatee being the sole " next of kin " of the testator at his death has been held sufficient to exclude him from taking in remainder under that designation.  The words relied on, as showing an intent to postpone the vesting, in *Butler* v. *Bushnell*, were, " to such persons as should *happen to be* my next of kin according to the statute of distributions; " and in *Briden* v. *Hewlett* were, " to such persons as *would be* entitled by the statute of distributions," these words being regarded as looking to the future, and so indicating that the gift over was intended to take effect in right as well as in possession at the expiration of the prior estate.  These cases have been a good deal doubted and criticised, and Mr. Jarman says of them that " at the present day it is not probable such decisions would be made."  Jarman on Wills, 5th Amer. ed.

677. The case of *Miller* v. *Eaton* is not now followed as authority in England.

The rule which is recognized in the later English cases as the correct rule is stated by Sir James Wigram in *Say* v. *Creed*, 5 Hare, 508, 587, in the words following, to wit: " Where a testator gives property to a tenant for life, and upon the death of the tenant for life to his next of kin, and there is nothing in the context to qualify, or in the circumstances of the case to exclude, the natural meaning of the testator's words, the next of kin of the testator living at his death will take ; and if the tenant for life be such next of kin, either solely or jointly with other persons, he will not on that account only be excluded." See, also, to the same effect, *Cusack* v. *Rood*, 24 W. R. 391, per Jessel, M. R., A. D. 1876. Of course, if the property be real, " heirs at law " takes the place of " next of kin " in any statement of the rule.

American cases that are directly in point are not numerous. The following cases are cited for the administrator : *Harris* v. *McLaran*, 30 Miss. 533 ; *Rand* v. *Butler*, 48 Conn. 293 ; *Stokes et al.* v. *Van Wyck et als.* 83 Va. 724. The first case is thus stated in the marginal note : A., the father, gave to C. by deed, in trust for B. his only child, several slaves for life, and after her death to her child or children, and, in default of issue living at her death, then to the lawful heirs of A., the donor. A. died leaving B. his only heir at law, who afterwards died without issue. *Held,* that an absolute estate in fee vested in B. by the terms of the gift ; but if it were otherwise, the limitation over to his lawful heirs remained in A. as his old reversion, and at his death went to B. as his next of kin, and not to those who by the death of B. became next of kin.

In *Rand* v. *Butler*, the testator gave by will real and personal estate in trust for B. for life, and directed the trustees after B.'s death to transfer the same to the testator's heirs at law. B. was an only child, mentally weak. He died without issue. The question was, whether the heirs at law, meant by the will, were the testator's heirs at law at his own or at B.'s death. The court held that, to warrant giving the word " heirs " any other than its ordinary meaning, it must be clear that the testator intended such other meaning ; that such an intention could not be inferred from

the facts that B. was mentally weak, that the testator put the property given to him for life in trust, and that he used " heirs " in the plural, A. being the sole heir; and that, if the heirs meant were those at B.'s death, the gift over was void under the Connecticut statute against perpetuities, so that the result would be the same whichever construction was adopted. The case is not a full precedent, but so far as it goes it is strongly in favor of the construction contended for by the administrator.

In *Stokes et al.* v. *Van Wyck et als.*, B., dying in 1834, devised real estate to his daughter, Mrs. W., for her life, remainder in fee to her issue, and in default thereof to his own right heirs. Mrs. W. was at the testator's death his only heir. In 1859 she sold and conveyed the estate. She died in 1884 without issue. In ejectment, by the testator's heirs living at Mrs. W.'s death, against her grantees to recover the estate, it was decided that the grantees acquired a perfect title by Mrs. W.'s conveyance. The case follows the later English decisions, and is fully in point.

The counsel for the heirs at law have cited no case that bears specifically on this point. They contend generally that the intention of the testator must govern, and that, when that appears, it overrides all rules and precedents, making its own law. This is generally so, but the intention that has this effect is the intention testamentarily expressed; and when the testator uses familiar legal words, he must be presumed to have used them in their ordinary meaning till the contrary clearly appears. Says the court in *Harris* v. *McLaren, supra* : " We cannot indulge in any hypothesis as to the intention of the donor. We can only know that intention by referring to the language which he has employed, and to those associated circumstances which the law has declared shall indicate his wishes. The terms ' lawful heirs,' ' right heirs,' and ' heirs ' are synonymous ; their signification is fixed by law ; and when they are used in a deed or will without any superadded words or phrases, indicating a different meaning, they are always understood to be used according to their legal acceptation."

It is a point in favor of the construction for which the administrator contends that the remainder, given over to the testator's own right heirs, is, strictly speaking, expectant on the determination, not of the son's equitable life estate, but of the trustee's legal

estate *pur autre vie*, so that there was no merger of the titles, the life estate being equitable and the remainder legal.

The court declare it to be their opinion that Daniel C. Kenyon took under the will of his father, George C. Kenyon, the estate given and bequeathed by the second clause thereof, by way of vested remainder in fee, and that, on said Daniel's death, the same descended to his heirs and legal representatives, subject to the payment of his debts.                          *Decree accordingly.*