IN RE E. M. IRISH'S WILL.

January Term, 1914.

Present: POWERS, C. J., MUNSON, WATSON, and HASELTON, JJ., and
WATERMAN SUP. J.

Opinion filed May 15, 1915.

*Wills—Construction—Designation of Legatees—"My Lawful
Heirs"—Gift to Class—Time for Determination—Giving
Effect to the Whole Will.*

A testator, 56 years of age and ill with the sickness whereof he died
25 days later, leaving his mother, a granddaughter, one sister, one
nephew, and five nieces, by the twelfth clause of his will gave
property in trust for his mother during her lifetime, and directed
that at her death the balance of the trust fund remaining should
be paid one-half to the granddaughter who was his heir apparent,
and one-half to "my lawful heirs." The grandchild's father was
living and was her heir apparent. The eleventh clause of the will
also gave property in trust for the granddaughter, and directed
that, if she died before reaching the age of 40 years, and left no
issue or children of issue, the trust fund should be ·paid one-half
to her lawful heirs and one-half to "my lawful heirs," and the
residuary clause gave the remaining estate in trust for· the grand-
daughter during her lifetime, and provided that, if she died leav-
ing no issue or children of issue, such remaining estate should be
paid one-half to her lawful heirs and one-half to "my lawful heirs."
*Held* that the term "my lawful heirs" in the twelfth clause of the
will was intended to designate only such persons as would have
been testator's "lawful heirs" had he left no issue surviving him,
and so does not include the granddaughter.

In the absence of any words showing a different sense, a bequest to
heirs, whether to one's own heirs or to the heirs of another, is a
gift to those who would be entitled to take under the statute of
distribution, and in the proportions there specified, and the use
of the word "lawful" before the word "heirs" makes no difference
in legal effect.

Under a bequest in trust that the fund and the income and interest
therefrom should be used as required for the support of the testa-

tor's mother during her life, and to defray her funeral expenses, and at her death one-half of so much of the fund as should then be remaining to be paid to the testator's lawful heirs, futurity is annexed to the gift over, and its vesting is suspended until the death of the mother, and that gift is in favor of only those within the description of the testator's lawful heirs at that time.

In construing a will none of its words are to be ignored, but all are to be construed, if possible, in a way to give them effect.

APPEAL from a decree of the probate court construing the will of E. M. Irish, Helen Harlow, appellant. Heard on an agreed statement at the September Term, 1911, Washington County, *Taylor*, J., presiding. Judgment affirming the decree of the probate court, which decreed the fund in question one-half to Helen Harlow and one-half to the testator's brothers and sisters, or their legal representatives. The appellant excepted. The opinion states the case.

*Fred L. Laird* and *J. W. Redmond* for the appellant.

Since Helen Harlow is the testator's "lawful heir," she takes both halves of the fund in question. *Hodges* v. *Phelps,* 65 Vt. 308; *Daggett* v. *Slack,* 8 Net. 450; *Tillingast* v. *Cook,* 9 Met. 143; *Houghton* v. *Kendall,* 7 Allen 72; *Brothers* v. *Cartwright,* 64 Am. Dec. 563; *In re Tucker's Will,* 63 Vt. 104; *Kendall* v. *Gleason,* 152 Mass. 457; *White* v. *Stanfield,* 146 Mass. 424; *Sweet* v. *Dutton,* 109 Mass. 589; *Fabens* v. *Fabens,* 141 Mass. 395; *Lincoln* v. *Perry,* 149 Mass. 373; *Kelley* v. *Vigas,* 112 Ill. 242; *Harrell* v. *Hagan et al.,* 60 S. E. 909; *Wool* v. *Fleetwood,* 136 N. C. 469, 48 S. E. 785, 67 L. R. A. 444; *Holloway* v. *Holloway,* 5 Vezey 399, 25 Eng. Rul. Cas. 687; *Evans* v. *Charles,* 1 Anstr. 128; *Bullock* v. *Downs,* 9 H. L. C. 1; *Nicholson* v. *Wilson,* 14 Sim. 549; *Seifferth* v. *Badham,* 9 Beav. 370; *Urquhart* v. *Urquhart,* 13 Sim. 627; *Lasbury* v. *Newport,* 9 Beav. 276; *Eddings* v. *Long,* 10 Ala. 203; *Taylor* v. *Perkins,* 72 N. H. 349; *Hughes* v. *Clark,* 16 Ky. Law. Rep. 41, 26 S. W. 187; *In re Fuller's Est.,* 225 Pa. 626, 74 Atl. 623; *Buzby's Appeal,* 61 Pa. 111; *Fargo* v. *Miller et al.,* 150 Mass. 225; *Welch* v. *Bremmer,* 169 Mass. 204.

*W. B. C. Stickney* for the appellee.

It was the intention of the testator to create two distinct classes of legatees, "Helen Harlow and her heirs," and "my lawful heirs." *Jarman on Wills* (6th ed.) *925; *Franklin* v. *Franklin*, 91 Tenn. 119; *Furnes* v. *Severtson*, 102 Iowa 322, 325; *Swenson* v. *Swenson*, 56 N. W. 1115; *Low* v. *Smith*, 25 L. J. Eq. 503; *Brake* v. *Stone*, 27 Vt. 475, 476; *Bullock* v. *Downs*, 9 H. L. C. 1; *Minot* v. *Harris*, 132 Mass. 528.

WATSON, J.   E. M. Irish died testate on September 17, 1895, aged fifty-six years.   By the twelfth clause of his will, in case his mother, Lucy McClintock, should survive him, he gave and placed in the care of a trustee the sum of four thousand dollars upon trust that said sum and the income and interest arising thereon should be used and expended as needed and required for the support of the said mother for the term of her natural life, and to defray the expenses of her funeral and burial, and so much of said sum with the accrued interest thereon, as should be remaining at the decease and burial of the said mother, the testator gave to be paid by the trustee as follows: "one-half thereof to my granddaughter, Helen Harlow and her heirs, and the other one-half thereof to my lawful heirs."'

In the statement of facts filed, it is agreed in effect that the testator executed the will in question on August 23, 1895, when he was sick in bed with the sickness which twenty-five days afterwards caused his death; that he left surviving him, his mother, but no father, no widow, no children and no issue except his granddaughter, Helen Harlow, who was then about three years of age and is the daughter of Addie Harlow, the only child of the testator; that he left surviving him one sister who died in 1906, leaving no will, no issue, and no husband surviving her; that he left surviving him one nephew and five nieces, the children of his deceased brothers; that one of these nieces died prior to the death of the testator's mother, leaving no will, no husband, and no issue surviving her.   It is further agreed that had the testator died intestate, the said Helen Harlow would have been and would now be his sole heir at law; that W. E. Harlow, the father of Helen, was living at the time the will in question was made, and is now living; that had the testator left no issue surviving him, the said nephew and nieces now in life, would have been the testator's only heirs at law at the time of his

decease, except the sister and the niece who subsequently died as before stated.

The testator's mother survived him several years, dying on February 25, 1900. After her decease, the trustee's account under the aforementioned clause of the will being rendered, the probate court decreed one-half of the trust fund remaining to the granddaughter, Helen Harlow, and the other one-half to the brothers and sisters of the testator, or to the representatives of the deceased brothers and sisters. On appeal by the granddaughter, the case was heard in the county court, resulting in an affirmance of the decree, and it is here on her exception.

Concerning the one-half of the trust fund decreed to the granddaughter, no question arises. But the granddaughter contends that since she was, at the time of the death of the testator, and now is, his sole "lawful heir," she is entitled under that clause of the will to a decree giving her the other one-half also. While the representatives of the testator's deceased brothers and sisters claim that by said clause they are entitled to one-half of the fund, as decreed by the court below. This presents the single question: In what sense did the testator use the phrase "my lawful heirs," in making that bequest?

The testator is presumed to have known, at the time of making his will, that the sole heir of his granddaughter, was her father, W. E. Harlow, and that this would be so certainly until she reached the age of maturity, except in the event of her father's death. And in that event while she remains single, any relatives she may have, other than through her father, are too remote to be noticed in determining the question before us. In the language of Chief Justice Field in *Welch* v. *Brimmer,* 169 Mass. 204, 47 N. E. 699, "There is nothing in the will indicating that the testator contemplated the possibility of marrying again and having children." It is a settled rule that a gift of personalty to "heirs" merely, whether to one's own heirs or to the heirs of another, is primarily to be held to be those who would be entitled to take under the statute of distributions, and to indicate, when there are no words in the will showing that the testator used the word "heirs" in a different sense, that they are to take in the same manner and in the same proportions as though the property had come to them as intestate's estate of the person whose heirs they are called. *Hodges* v. *Phelps,* 65 Vt. 303, 26 Atl. 625. The use of the word "lawful" before the word "heirs"

in the phrase particularly under consideration, makes no difference in legal effect. *Simpson* v. *Ashworth,* 6 Beav. 412; *Mathews* v. *Gardiner,* 17 Beav. 254. See also *In re Tucker's Will,* 63 Vt. 104, 21 Atl. 272, 25 Am. St. Rep. 743.

It will be seen that by the ninth clause of the will, the sum of fifteen thousand dollars was given and placed in trust for the use of the granddaughter, she to receive a part of the principal at the age of eighteen years, (by the tenth clause), a further part of the principal at the age of thirty years, and the remaining part thereof when she arrives at the age of forty years. The eleventh clause provides: "In case of the decease of the said Helen, before she shall arrive at the age of forty years, then the aforesaid payments are to be made to her lawful issue in equal shares and so to the heirs of such issue, but in case no such issue, or children of such issue, shall survive the said Helen, then the said fund or so much thereof as shall be remaining, is by me given to, and is to be paid, one-half thereof to the lawful heirs of the said Helen, and the other one-half thereof to my lawful heirs." By the twentieth (residuary) clause, the residue and remainder of the estate, not otherwise disposed of, is given and placed in trust for the said Helen, to have the interest and income thereof during her lifetime, and at her decease the estate so held in trust is given to her lawful issue, in equal shares, and to the heirs of said issue; "but in case no such issue, or children of such issue, shall survive the said Helen, then the said residue and remainder of my said estate is given to, and is to be paid, one-half thereof to her lawful heirs, and the other one-half thereof, to my lawful heirs." Thus under the eleventh clause the remaining portion of the fund there mentioned, and under the residuary clause the residue and remainder of the estate, each in a certain contingency, and under the clause in question the trust fund at the termination of the life interest, are severally disposed of by moieties: in the first and second instances, one moiety is given to a class comprised of the "lawful heirs" of said Helen, and in the third instance, one moiety is given to "Helen Harlow and her heirs;" while in every instance the other moiety is given to a class described by the testator in exactly the same words, "my lawful heirs."

Under the eleventh and under the residuary clauses respectively, the gift is over to the two classes only in the contingency of the decease of Helen, leaving no lawful issue, or children of

such issue, surviving her. This being so, it is clear that the two classes there intended by the testator are wholly different, and it is equally clear that by the phrase "my lawful heirs," the testator there meant those who by the laws of distribution would, in such circumstances, be his heirs. This manifestly being the intended meaning of that phrase in those two clauses, we think that in the circumstances of this case, Mr. Jarman's eighteenth cardinal rule of construction (3 Jarm. Wills., 5th Am. Ed. 707) .is applicable: "That words, occurring more than once in a will, shall be presumed to be used always in the same sense, unless a contrary intention appear by the context, or unless the words be applied to a different subject." That this rule is of common application, is obvious from the many cases in which it has been followed, some of which we mention: *In re Birks,* (1900) 1 Ch. 417; *Pease* v. *Cornell,* 84 Conn. 391, 80 Atl. 86; *Mathes* v. *Smart,* 51 N. H. 438; *Stewart* v. *Stewart,* 61 N. J. Eq. 25, 47 Atl. 633; *In re Duckett's Will,* 214 Pa. St. .362, 63 Atl. 830; *Roskrow* v. *Jewell,* 154 Ia. 634, 135 N. W. 3, Ann. Cas. 1914 B, 63.

In all three instances the words "my lawful heirs" are applied to the same subject-matter, that is, the disposition of parts of the testator's estate; and not only does nothing appear showing an intention to use them in a different sense in the clause in question from what they are used in the other two, but the presumption that they were used in the same sense is strengthened by the fact that in disposing of the trust fund at the determination of the life interest, instead of employing a single expression indicating a purpose to give the remaining portion, as a whole, to his granddaughter and her heirs, the testator divided it into moieties, and used different forms of expression in giving them separately, one in terms .to the granddaughter and her heirs, and the other to "my lawful heirs," using the same form and the same words as in the other two instances noted. Had the testator's purpose been to give the whole to Helen and her heirs, it was a very simple matter so to declare, as he did in respect to the moiety thus given.

We think it is clear from the will and the circumstances surrounding the making of it, that the testator used the phrase "my lawful heirs" in the clause in question, in the same sense as he used it in the eleventh and in the residuary clauses, and that he intended by that phrase to include only such persons as would be his "lawful heirs," had he left no issue surviving him.

But in determining who such "lawful heirs" are, it is necessary to look at the time when the gifts over became vested, a question more or less discussed by counsel on both sides. Here the principal of the trust, as well as the income and interest arising therefrom, was to be used and expended as needed and required for the proper and comfortable support of the testator's mother for the full term and period of her natural life, and to defray the expenses of her funeral and burial. It was only so much of said sum with the accrued interest thereon as should be remaining at the termination of the trust,—and it might be much, or little, or none at all,—that was given over in moieties. Futurity is annexed to the substance of this gift, and consequently the vesting was suspended until the time when the bequest should take effect, (Jarm. Wills, 5th Am. Ed. 453;) and the bequest to the class "my lawful heirs" is only in favor of those who at that time came within the description. *Goebel* v. *Wolf,* 113 N. Y. 411, 21 N. E. 388, 10 Am. St. Rep. 464; *In re Allen,* 151 N. Y. 243, 45 N. E. 554. Moreover, we think the words "for the time being" were used by the testator in connection therewith, as having reference to those who should answer the description of the class when the bequests should become effective. See *Moss* v. *Dunlop,* Johns. Eng. Chy. 490. No other meaning of these words is apparent, and they are not to be treated as a nullity—they are to be construed, if possible, in a way to give them effect. *Richardson* v. *Paige,* 54 Vt. 373. "One of the most helpful principles of construction in ascertaining the intention of the testator is, to give force and effect to every clause of the will. It is not to be presumed that he used an unnecessary word, or one to which no proper force can be given." *Shepard's Heirs* v. *Shepard's Estate,* 60 Vt. 109, 14 Atl. 536.

The record does not show that the decree below is not in accordance with the views here expressed.

*Decree affirmed. To be certified to the probate court.*