## In re William S. Carter's Will.

### May Term, 1926.

Present: Powers, Slack, and Fish, JJ., and Moulton, and Graham, Supr. JJ.

#### Opinion filed October 6, 1926.

*Wills—Intention of Testator—Presumption as to Vesting of Remainders—Vesting Where Futurity Annexed to Time of Payment Only—Gift of Personalty to "Heirs," "Lawful Heirs," or "Heirs at Law"—When Remaindermen Take Vested Interest—As of What Time Remaindermen Are to Be Ascertained—That Cestui Que Trust Member of Class Designated as Remaindermen Does Not Raise Presumption of Intention To Exclude Him—Matters for Consideration in Ascertaining Testator's Intention—Will To Be Construed to Make Provisions Effective, if Possible—Meaning of Term "Heirs at Law" as Used in Particular Will.*

1. In construction of will, intention of testator, so far as it may be legally carried out, is to govern.

2. Law favors early vesting of estate, and presumes in favor of vesting of remainders in interest on death of testator, if language used is consistent with an intention to postpone enjoyment only; and such presumption is so favorably regarded that no estate will be held contingent unless positive terms are employed in will indicating contrary intention.

3. If futurity is annexed to substance of gift, vesting is postponed; but if to time of payment only, legacy vests immediately.

4. A gift of personalty to "heirs" or "lawful heirs," or "heirs at law," means primarily those who would be entitled to take under statute of distributions, and indicates, when there are no words in will showing that testator used word "heirs" in a different sense, that they are to take in same manner and in same proportions as though property had come to them as intestate's estate of person whose heirs they are called.

5. Under will creating certain trusts with gift over to testator's "heirs at law," *held* that remaindermen took vested interest on testator's death, and that persons to whom limitation over is made

are to be ascertained as of time of testator's death, and not at termination of particular estate.

6. Remaindermen take a vested interest on testator's death, and are to be ascertained as of time of testator's death, and not at termination of particular estate, in the absence of clear and unambiguous indications of a different intention, derived from context of will, read in light of surrounding circumstances.

7. Under will creating trust in favor of testator's wife and son with remainder over to testator's "heirs at law," that son was sole member of such class does not give rise to presumption of an intention to exclude him..

8. Circumstance that first taker is among members of class, or sole member thereof, designated to receive gift over, at time of testator's decease, may be taken into consideration in ascertaining testator's real intention as testamentarily expressed, hence is properly considered in determining whether testator has impliedly excluded such first taker from participation in gift over.

9. Intention of testator is to be ascertained from language employed and the associated circumstances.

10. Will should not be construed so as to nullify any of its provisions, if it can be construed in such a way as to give them effect.

11. From language of will creating trust in favor of testator's wife and son with remainder over to testator's "heirs at law," and from circumstances surrounding making of will, *held* that testator intended to include only such persons in term "heirs at law" as would have been included thereunder had he left no son surviving him, to be ascertained as of the date of testator's death.

APPEAL to Supreme Court from decree of probate court for the district of Hartford distributing principal and accumulations of trust fund created by will of William S. Carter to the legal representative of his son, William T. Carter. Laura Carter Brown, who at the time of testator's death was one of his heirs at law, if son William T. Carter be excluded, appealed. The opinion states the case. *Reversed and remanded.*

*Stanley C. Wilson* and *Hale K. Darling* for the appellant.

When futurity is annexed to the substance of a gift, vesting

is postponed; but if annexed to time of payment only, the legacy
vests immediately.     *In re Tucker's Will,* 63 Vt. 104, 25 A. S. R.
743; *Weatherhead* v. *Stoddard,* 58 Vt. 623; *Jones* v. *Knappen,*
63 Vt. 391; *Burton* v. *Provost,* 75 Vt. 199; *Harris* v. *Harris'*
*Estate,* 82 Vt. 199, 204; *In re Robinson's Estate,* 90 Vt. 328, 332;
*In re Mansur's Will,* 98 Vt. 296; *McArthur* v. *Scott,* 113 U. S.
340, 28 L. ed. 1015; *Doe* v. *Considine,* 8 Wall. (73 U. S.) 458, 18
L. ed. 869.

Where income of a fund is bequeathed to one person for
life, with a gift over to another of the principal, the remainder
interest ordinarily vests at once upon death of testator.  *Thomas*
v. *Anderson,* 21 N. J. Eq. 22; *Bowditch* v. *Andrew,* 8 Allen, 339;
*Crosby* v. *Crosby,* 64 N. H. 77, 5 Atl. 907.

The word "heirs" ordinarily refers to those who were such
at time of testator's death.  *In re Peck's Estate,* 96 Vt. 183,
188; *Welch* v. *Blanchard,* 208 Mass. 523, 33 L. R. A. (N. S.) 1,
and note; *Minot* v. *Harris,* 132 Mass. 528; *Abbott* v. *Bradstreet,*
3 Allen 587; *McArthur* v. *Scott,* 113 U. S. 380, 28 L. ed. 1027.

If by any rational construction the several parts of a will
can be made to harmonize and to consist with the obvious
general intent of testator, no part should be rejected or denied
its legitimate effect.  *In re Keniston's Will,* 73 Vt. 75; *Mc-*
*Closkey* v. *Gleason,* 56 Vt. 264; *Richardson* v. *Paige,* 54 Vt. 373;
*Hibbard* v. *Hurlburt,* 10 Vt. 173.

In construing a will creating a trust, the intent of testator
is to be ascertained from the words used in connection with the
situation of the parties, the surrounding circumstances, the object
to be accomplished; and when so ascertained, it is to be followed.
*Clark* v. *Peck,* 41 Vt. 145, 152; *Richardson* v. *Paige,* 54 Vt. 373,
378; *Wales* v. *Bowdish,* 61 Vt. 23, 27; *Conant's Executors* v.
*Palmer,* 63 Vt. 310, 314; *In re Keniston's Will,* 73 Vt. 75, 83.

*Stickney, Sargent & Skeels* and *Olin M. Jeffords* for the
appellees.

There is a presumption in favor of vested estates, and this
is conclusive in the absence of unequivocal words showing that
the testator intended the gift to be contingent.  *Weatherhead* v.
*Stoddard,* 58 Vt. 625; *In re Tucker's Will,* 63 Vt. 104; *Jones*
v. *Knappen,* 63 Vt. 391; *Burton* v. *Provost,* 75 Vt. 199; *Harris*

v. *Harris' Estate*, 82 Vt. 199; *In re Robinson's Estate*, 90 Vt. 328; *In re Mansur's Will*, 98 Vt. 296.

Reference by a testator to his heirs is presumed to indicate those who are such at the time of his death. *In re Tucker's Will, supra; Hodges* v. *Phelps*, 65 Vt. 303; *In re Irish's Will*, 89 Vt. 59.

A different intent is not to be inferred merely because the person to whom a life estate is given is one of the heirs at law or the only heir at law. *Kenyon, Petitioner*, 17 R. I. 149; *Rand* v. *Butler*, 48 Conn. 293; *Thomas* v. *Castle,* 76 Conn. 447; *Brown* v. *Spring*, 241 Mass. 565; *In re Bump*, 234 N. Y. 60; *Himmel* v. *Himmel*, 294 Ill. 557, 13 A. L. R. 608; *Doe dem, Garner* v. *Lawson*, 3 East. 278; *Lee* v. *Lee*, 1 Drew & S. 85; *Bullock* v. *Downes*, 9 H. L. 1; *Re Ford, Patten* v. *Sparks*, 72 L. T. N. S. 5; *Gorbell* v. *Davison*, 18 Beav. 556; *Thompson* v. *Smith*, 27 Can. S. C. 628; Note, 13 A. L. R. 615.

GRAHAM, Supr. J.   This is an appeal from a decree of the probate court within and for the probate district of Hartford decreeing distribution of the principal and accumulations of a trust fund created by the will of William S. Carter. After making gifts of $20,000 each to his wife and son, by the third clause of his will, the testator made the following provision:

"Third.   It is further my will that after the Legatees before named shall have received the said sums of Twenty Thousand Dollars each, as before provided, that there shall be paid into the hands, and possession of the Trustees herein after named, the sum of Ten Thousand Dollars ($10,000) to be by them held in trust, in and for the purposes and use, and in the manner provided.

1st.   To pay and account to the before named Mary Elisabeth, and William T. Carter, the annual income, rental, interest or profits of said sum before mentioned, yearly, in equal parts or portions, for and during the respective lives of each of them, and to pay to the survivor of them, the whole of all said income, rental, interest or profits, during the time he or she shall survive the other, subject to the conditions and restrictions, hereinafter contained.

2nd.   In the event the said William T. Carter shall decease before his mother the said Mary Elisabeth, he the said William leaving a widow and issue, or either of them, surviving him, then

and in that case the Trustees, are to pay over and account to said widow and children, the part or portion that is above mentioned to be paid to said William T. unless the said William shall direct by his will, that the whole of said fund or portion to be paid annually to him as before mentioned, shall be paid to his issue alone, instead and in the place of his widow and issue.

3rd. After the decease of both my widow the said Mary Elisabeth and my son the said William T. the fund remaining in the hands of the Trustees is to descend and to be divided to and among my heirs at law.

And in the event that my son shall arrive at the age of thirty-five years of age, and live until he shall fully attain that age the Trustees hereby authorized and empowered to fully complete and determine this trust, by paying over and accounting to the my said heirs at law for the full amount of the fund and property remaining in their hands and possession, if in their opinion and judgment, it shall be for the best interest and benefit of all persons, to be benefited hereby, but in the event that said trust is determined, as last .provided, my said wife is to receive one-half of or portion of said fund and property, in her own right, to be by her held as her own property, without any claim on the part of any person whomsoever.''

The agreed facts, deemed essential to the determination of the question presented, are these:

William S. Carter died October 3, 1873, aged forty-nine years, leaving his will dated June 24, 1872, which was duly proved and allowed in Probate Court on December 12, 1873. The testator was survived by his widow, Mary Elisabeth Carter, who died June 17, 1909, aged eighty-six years, and one child, William Thomas Carter, who died without issue April 2, 1925, aged seventy-four years. The next of kin of the testator at the time of his death, if he had left no issue, would have been a brother, Thomas S. Carter; a sister, Laura Carter Barron, and Laura Wolcott, who was the only issue of Mary Carter Wolcott, a sister of the testator, who had predeceased him. The said Thomas S. Carter died without issue in 1910. The said Laura Carter Barron died in 1890 leaving three children, Laura A. Barron, Osie B. (Barron) Landers, and Frank Barron, each of whom predeceased the said William T. Carter. The said Osie left as her only issue, Laura C. (Landers) Brown, and said Frank

left a son and only issue. F. Carter Barron. The last named, Laura and F. Carter, are living. The said Laura Wolcott (Reding by marriage) died without issue in 1916.

William T. Carter at no time was able to take sole care of his property. From about the age of thirty years until his death he was confined in a hospital for the insane. He never married.

The trust fund here in question was cared for by trustees until the date of the death of William T. Carter, after which the trustees rendered to the probate court their final account which was duly allowed, and thereupon said trustees were ordered to pay said fund with any and all accumulations to the legal representative of William T. Carter. The appellants contend that this fund should have been decreed to the estates of Thomas S. Carter, Laura Carter Barron, and Laura Wolcott, who at the time of the death of the testator were his heirs at law, excluding the son, William T. Carter. This presents the single question: Did the testator intend to exclude his son from the class described as "my heirs at law"?

[1-6] The well-established and cardinal rules of construction are: That the intention of the testator, so far as it may be legally carried out, is to govern; that the law favors the early vesting of estate and presumes in favor of the vesting of remainders in interest on the death of the testator, if the language used is consistent with an intention to postpone the enjoyment only; that this presumption is so favorably regarded that no estate will be held contingent unless positive terms are employed in the will indicating a contrary intention (*In re Will of Mansur*, 98 Vt. 296, 298, 127 Atl. 297, and cases there cited); that if futurity is annexed to the substance of the gift, the vesting is postponed; but if annexed to the time of payment only, the legacy vests immediately (*In re Will of Mansur*, 98 Vt. 296, 299, 127 Atl. 297; *In re Robinson's Estate*, 90 Vt. 328, 333, 98 Atl. 826); that a gift of personalty to "heirs," or "lawful heirs," or "heirs at law," whether to one's own heirs or to the heirs of another, is primarily to be held to be those who would be entitled to take under the statute of distributions, and to indicate, when there are no words in the will showing that the testator used the word "heirs" in a different sense, that they are to take in the same manner and in the same proportions as though the property had come to them as intestate's estate of the person whose heirs

they are called. *In re Irish's Will,* 89 Vt. 56, 59, 94 Atl. 173, Ann. Cas. 1917C, 1154; *Hodges* v. *Phelps,* 65 Vt. 303, 26 Atl. 625. Applying these rules to the language of this will, it is clear that the testator intended, and we accordingly hold, that the remaindermen took a vested interest on the testator's death, and that the persons to whom the limitation over is made, answering the description "my (the testator's) heirs at law," are to be ascertained as of the time of the death of the testator, and not at the termination of the particular estate. See *In re Tucker's Will,* 63 Vt. 104, 21 Atl. 272, 25 A. S. R. 743; *Bullock* v. *Downes* (1860) 9 H. L. Cas. 1, 11 Eng. Reprint, 627; *Lee* v. *Lee,* 1 Drew. & S. 85, 62 Eng. Reprint, 310. This is the universally recognized rule in the absence of clear and unambiguous indications of a different intention, derived from the context of the will read in the light of the surrounding circumstances. See 33 L. R. A. (N. S.) p. 2, note 2; 13 A. L. R. at p. 616, where the cases are collected and discussed.

Thus far the parties are in agreement, and no claim otherwise is made in the briefs or argument of counsel. The appellant contends that inasmuch as the son, William T., was the sole prospective heir of the testator at the time the will was made, and was his sole heir at law at his death, the testator intended to exclude him from the class ("my heirs at law") entitled to the remainder, and the appellee contends that no such intention is expressed or implied in the language of the will. This is the real question for determination.

[7] Giving the words "my heirs at law" their natural and technical meaning, the son was the sole member of the class, but from this circumstance alone there is no presumption of an intention to exclude him. *Lee* v. *Lee, supra; Welch* v. *Brimmer,* 169 Mass. 204, 47 N. E. 699; *Heard* v. *Read,* 169 Mass. 216, 47 N. E. 778; *Rand* v. *Butler,* 48 Conn. 293; *Thomas* v. *Castle,* 76 Conn. 447, 56 Atl. 854; *Nicoll* v. *Irby,* 83 Conn. 530, 77 Atl. 957; *Smith* v. *Winsor,* 239 Ill. 567, 88 N. E. 482; *Himmel* v. *Himmel,* 294 Ill. 557, 128 N. E. 641, 13 A. L. R. 608; *Tathams' Estate,* 250 Pa. 269, 95 Atl. 520, Ann. Cas. 1917A, 855; *In re Kenyon,* 17 R. I. 149, 20 Atl. 294; *Say* v. *Creed,* 5 Hare, 580, 587; *Stewart's Estate,* 147 Pa. 383, 23 Atl. 599.

In *Lee* v. *Lee, supra,* it is said: "That (as a general rule) if a testator bequeaths property to a class by a particular description, and a question arises whether a certain individual who

comes within the description ought or ought not to be excluded, it is not sufficient, in order to exclude him, to show the absence of a special intention to *include* him; you must show a clear and unambiguous indication of an intention to *exclude* him.''

In *Say* v. *Creed, supra,* it is said: ''Where a testator gives property to a tenant for life, and, after the death of the tenant for life, to his next of kin, and there is nothing in the context to qualify, or in the circumstances of the case to exclude, the natural meaning of the testator's words, the next of kin of the testator living at his death will take; and, if the tenant for life be such next of kin, either solely or jointly with other persons, he will not on that account only be excluded.''

[8]   But it is a well-recognized rule that the circumstance that the first taker is among the members of the class, or the sole member thereof, at the time of the testator's decease, may be taken into consideration in ascertaining testator's real intention as testamentarily expressed, and is properly to be taken into consideration in determining whether the testator has impliedly excluded such first taker from participation in the gift over. See annotation 13 A. L. R. at page 620, and cases there cited and discussed.

[9]   The prime rule of construction, as we have seen, is that the intention of the testator must govern.  Such intention is to be ascertained by referring to the language employed and the associated circumstances.  *Richardson* v. *Paige,* 54 Vt. 373; *In re Irish's Will,* 89 Vt. 56, 94 Atl. 173, Ann. Cas. 1917C, 1154; *In re Kenyon, supra; Nicoll* v. *Irby, supra.*  The rule is well stated in *Nicoll* v. *Irby,* thus:

''When the word [heirs] is used in a will to point out legatees or devisees, its primary meaning is to be given to it, unless it clearly appears that the testator used it in a different sense. * * * But the presumption that a testator used language in its usual and legal sense will be overthrown when an examination of the instrument, in the light of the surrounding circumstances, clearly shows that the intent of the testator will not be effectuated by so interpreting it, and that the language was used in another sense.''

Referring to the provisions of the testator's will, it will be seen that by the creation of said trust fund the testator intended to provide for three classes of beneficiaries—first, his son and widow; second, the son's widow and children, if any; third, his

heirs at law; and by the provision for the termination of the trust in the event the son shall arrive at the age of thirty-five years, has provided for two classes of beneficiaries—first, his widow; and second, his "said heirs at law."

After providing for said trust fund and the making of certain specific legacies, including one to his brother, Thomas S. Carter, a small legacy to his niece, Laura C. Wolcott, and a like sum each to the children of his sister, Laura Barron, the testator says:

"The residuary part of my estate, both real and personal is to be equally divided between my wife, the said Mary Elisabeth and my son William T. and his heirs at law, in equal parts or portions, without any claim on the part of any person whomsoever."

It is apparent that the testator did not intend to include his widow in the designation of "my heirs at law," for he had in mind her rights, and specifically says that the provisions and legacies made for her use and benefit "are to be construed and regarded as made in lieu and in the place of any right or interest she may hold or have in my estate, by the power or virtue or force of any law in this or any other state, whether the same be for dower or assignment or in way whatever."

[10]    The testator throughout the whole of his will uses specific and familiar legal words when providing for his son and the individuals or class that might ultimately inherit his estate, thus: "My son William T. Carter," "said William T.," "my son," "widow and issue," or "said widow and children" (of William T.), and "my son William T. and his heirs at law." These expressions were all used to carry out definite objects and intentions. This being so, to sustain the construction of the probate court, it is necessary to treat as a nullity the limited provision for the benefit of any "widow and children" of the son, and also the limited power of appointment given to the son William T.   They are not to be so treated if they can be construed in a way to give them effect. *Richardson* v. *Paige,* 54 Vt. 373; *In re Irish's Will,* 89 Vt. 56, 62, 94 Atl. 173, Ann. Cas. 1917C, 1154.   These provisions can be given effect only by holding that when the testator says that "the fund remaining in the hands of the trustees is to descend and to be divided to and among my heirs at law," he intended to and did refer to a class of persons that did not include his son.   Any doubt as to the

testator's intention is removed by the provision for the termination of the trust. The phrase "the my said heirs at law" is used in the same sense and has reference to the same class of persons as the preceding phrase "my heirs at law." *In re Irish's Will,* 89 Vt. 56, 61, 94 Atl. 173, Ann. Cas. 1917C, 1154. This sense is made doubly clear by specific reference. In the event stated the testator provided for distribution of the principal of the trust during the life of the son, and for that prupose divided the fund into moieties, and in terms giving one-half to his wife and one-half to "the my said heirs at law." Had it been his intent and purpose to give one-half of the principal to his son and his heirs, he would have so declared in definite language, as he did in respect to the residuary part of his estate. *In re Irish's Will, supra.*

In this respect, the provisions of the will under consideration in the Irish Case are so similar in terms as to make that case controlling authority here.

[11] From the consideration of the language of the whole will and the circumstances surrounding the making of it, we hold that the testator intended to include only such persons as would be his "heirs at law," had he left no son surviving him, and that the fund remaining in the hands of the trustees belongs to the testator's heirs at law, exclusive of his son, and to be ascertained as of the date of the death of the testator.

*Decree of the probate court reversed and cause remanded for further proceedings and decree in accordance with the views herein expressed. Let the appellant recover her costs in this Court. To be certified to the probate court.*