Belknap,  }
Dec. 4, 1928. }

FREDERICK W. FOWLER, *Ex'r*, *v.* BELLE WHELAN & *a.*

*Frederick W. Fowler*, for the plaintiff.

*Joseph D. Sullivan, Frank N. Parsons* and *Wayne M. Plummer* (*Mr. Parsons* orally), for Belle Whelan.

*Jewett & Jewett*, for John Daley.

SNOW, J.  The question presented is whether, Honoria having predeceased the testatrix, Belle as the survivor takes all given by the eighth, tenth, and twenty-ninth clauses of the will; or whether, because of Honoria's death one-half of the gifts given by these clauses lapses, and being undisposed of by the will passes under the statute of distributions to the testatrix's next of kin.

It appears to be mutually conceded that the general rule that a legacy will lapse or be extinguished by the death of a legatee during the lifetime of the testator usually applies where a gross sum is given

to several legatees by name, to be equally divided between them; but that such application of the rule must yield to a paramount intention to constitute the named legatees a class, with rights of survivorship, when such intention appears from the whole will, construed in the light of the competent facts. Such are the holdings of this court. *Hall* v. *Smith*, 61 N. H. 144, 146; *Brewster* v. *Mack*, 69 N. H. 52. The reason for the *prima facie* application of the general principle of lapsing to gifts *nominative* is that language naming the legatees, when given its ordinary significance, usually imports individual gifts. *Jackson* v. *Roberts*, 14 Gray 546, 550, 551.

In each of the three clauses in question the legatees appear *nominatim*, the designating and descriptive words being substantially identical, namely, "to my . . . sisters, Belle Whelan and Honoria Daley." It follows that the question presented in each instance is whether there is sufficient evidence of an intention that the sisters shall take as a class to overcome the natural and ordinary signification of the language designating the beneficiaries by name. The evidence adduced in support of such an intention varies with each section.

In the eighth clause, the bequest is of the personal clothing of the testatrix "for such disposition as they [the sisters] may mutually agree upon." This language contemplates joint action of the beneficiaries, and it is a fair inference from the language and the subject-matter of the gift that the testatrix intended in the case of the predecease of one of the beneficiaries, that, the other should have the disposition of her personal clothing. Such a power requires joint title. The clause thus contains within itself express evidence that the gift was intended to be to the sisters in joint tenancy — a title which carries the right of survivorship.

In the tenth clause, the gift is of "my two dozen solid silver tea spoons and my two solid silver table spoons." Articles of this class are regarded in the ordinary family as in the nature of family heirlooms to be handed down from one generation to another. Neither the condition nor the relative values of the fourteen spoons are disclosed, and no method of equal division is provided. In the light of the extrinsic fact that the sisters had, for thirty-five years, resided together as a single family and, to the knowledge of the testatrix, expected to continue to do so for the remainder of their joint lives, the subject-matter of the gift warrants an inference that she designed that the spoons should be retained in the family for the joint use of the legatees, and intended to confer upon them a title which would accomplish that purpose. It therefore seems more probable than

otherwise that she intended a joint gift by which the spoons would pass to the survivor. This construction, as well as that which we have given the eighth clause, is conceded in argument, and the ground upon which the conclusion in each case has been reached is here set forth only because the interpretation of these clauses is deemed to be material to the construction of the clause remaining to be considered.

The twenty-ninth clause disposes of the residue of the testatrix's estate as follows: "The sum of Five Thousand Dollars, to be held in trust as hereinbefore stipulated, for the benefit of my brother, John Daley, and the remainder of said rest and residue equally to my sisters Belle Whelan and Honoria Daley." The last nine words, if given their ordinary meaning under the general rule as usually applied, denote a gift to the sisters individually of one-half of such remainder to each. Since the executors are directed to reduce all real estate to cash, and the personal estate forming the residue is to be so reduced (P. L., c. 300, ss. 7, 8) or treated as cash, the bequest is of money. There is, therefore, nothing in the subject-matter of the gift here, as there is in that of the tenth clause, indicative of a purpose to bestow a joint enjoyment of the *res*. Nor does this clause, like the eighth, contain express internal evidence of an intention to confer a joint title to the property therein bequeathed.

It follows that, if clause twenty-nine were to be construed by itself, we should have to conclude that the testatrix intended that her sisters should take individually and not as a class. But no such narrow rule prevails. "The construction of a will is the ascertainment of the testator's intention, and this is to be gathered, not alone from the words of the particular clause under consideration, but from the language of the will as a whole, read in the light of all the surrounding circumstanes." *Page* v. *Library*, 69 N. H. 575, 576, and cases cited. "Though the bequest be to individuals by name, yet if it appears upon the whole will that the testator considered them as constituting a class, and intended that the whole should go to the survivors, that intention will prevail." *Hall* v. *Smith*, 61 N. H. 144, 146; *Brewster* v. *Mack*, 69 N. H. 52, 53; *Jackson* v. *Roberts*, 14 Gray 546, 551; *Stedman* v. *Priest*, 103 Mass. 293, 296; *Rockwell* v. *Bradshaw*, 67 Conn. 8, 16, 17.

While the words "equally to my sisters, Belle Whelan and Honoria Daley," as more commonly understood, import individual gifts, this is not the only meaning of which they are capable. Had the bequest been "equally to my sisters" with no qualifying words, the gift to a class would have been indicated. The word "equally" has no controlling significance. *Campbell* v. *Clark*, 64 N. H. 328; *Snow* v. *Durgin*,

70 N. H. 121. The succeeding enumeration of the sisters serves a legitimate purpose if construed as a specification of the members of the class. Such an interpretation, though contrary to the more common import of the words, does no violence to the language used. If, therefore, an intent to use the words in that sense is apparent from the whole will it is the duty of the court to give it effect.

Where words occur more than once in a will, unless a contrary intention appear by the context, or unless the words be applied to a different subject, there is a strong inference that they are used in the same sense. 2 Jarman, Wills (5th Am. *ed.*), 773; *Hall* v. *Hall*, 27 N. H. 275, 288; *Mathes* v. *Smart*, 51 N. H. 438, 442; *Hall* v. *Wiggin*, 67 N. H. 89, 91; *Barnes* v. *Church*, 82 N. H. 503, 504; *In re Irish's Will*, 89 Vt. 56, 61. This rule "is founded on reason, and is in accord with the fundamental rule which requires us to seek from the language of a will the intent of the testator." *Stewart* v. *Stewart*, 61 N. J. Eq. 25, 29. Words are applied to the same subject within the meaning of the rule when they are applied to the disposition of parts of the testator's estate. *Id.; In re Irish's Will, supra.*

The language used in the twenty-ninth clause, so far as material here, is identical with that in the eighth and tenth, where in each instance the context discloses an intention to treat the sisters as a class. Such repeated use of the same or similar words in a special and peculiar sense is persuasive evidence that when the testatrix used the same form of expression in the twenty-ninth clause she intended that it should convey the same meaning. *Varrell* v. *Wendell*, 20 N. H. 431, 436; *Schaffer* v. *Kettell*, 14 Allen 528, 529; *Eliot* v. *Carter*, 12 Pick. 435, 442. "If it appear that in parts of the will he [testator] has employed terms in a way clearly indicating his own understanding of their import, however this may differ from their legal or ordinary meaning, there can be no safer way of developing the testator's purpose than to give to these same terms, when elsewhere appearing throughout the instrument, the same meaning the testator has attached to them in the particular instances where his understanding of them is apparent, except as a different purpose in their use is expressed." *In re Duckett's Estate*, 214 Pa. St. 362, 367. "Where in one part of the will he [testator] treats the objects of his bounty as a *class*, and in another part of the will he refers to them by the same words of description, the presumption is that he uses the same words in the same sense, and intends them to take as a class. . . ." *Lockhart* v. *Lockhart*, 56 N. C. 205, 206; *Grandy* v. *Sawyer*, Philip's Eq. (N. C.) 8, 10; *Ferrer* v. *Pyne*, 18 Hun 411, 413; s. c. 81 N. Y. 281, 284. See 16 A. L. R. 32 *n.*

On the balance of probabilities it is our conclusion that the testatrix, by the bequest to the sisters in the twenty-ninth clause, as in the eighth and tenth clauses, intended a gift to her "sisters" as a class.

This result is confirmed by other general considerations disclosed by the will. The residuary clause of the will in terms disposes of "all the rest, residue and remainder of my estate of every kind and nature whatsoever," disclosing a clear intent to die testate as to all her property. The unusual method of limiting a specific amount for the brother's benefit out of the residue has some tendency to show that the testatrix intended thereby to fix a bound to his share therein. Both of these purposes are satisfied under the foregoing interpretation. The testatrix by the second and third clauses makes cash bequests of five thousand dollars each to her sisters, and by the fourth clause gives a like amount for the benefit of her brother. This bequest to the brother, as well as the gift of a further five thousand dollars limited to him out of the residue, is placed in trust. The time and amount of the payments to him of the income, as well as expenditures of the principal for his care and comfort, are made discretionary with the trustee, and any unexpended balance of the funds remaining upon his decease given to his wife by the thirtieth clause. All this is evidence of the testatrix's belief that the brother was unfit to have control of property and tends to negative any understanding on her part that he might come into the uncontrolled possession of a portion of her estate through her intestacy.

Her apparent design to leave no intestate property, her inferred intent to definitely limit her brother's share in the residue, and her belief in his unfitness to be entrusted with the direct control of property when considered in connection with the fact, that, although she survived her sister Honoria by nearly six months, she made no change in her will, tend to show her understanding that the contingency of the decease of either one of her sisters in her lifetime had been provided for through the right of survivorship.

Counsel for the brother request that they be permitted to show from the probate records the amount of the residuary estate. In view of the grounds upon which our conclusion has been reached, the size of the residue would appear to be immaterial.

The executor is advised that the legacy to Honoria under the third clause lapses and falls into the residuum of the estate; that the bequests to her in the eighth, tenth and twenty-ninth clauses pass by survivorship to Belle Whelan.

*Case discharged.*

ALLEN and MARBLE, JJ., dissented: the others concurred.