**W. W. JOHNSON et al., Appellants,**

**v.**

**Josephine HOUCHINS et al., Appellees.**

Court of Appeals of Kentucky.

Dec. 11, 1959.

Pierce Lively, Nelson D. Rodes, Jr., Danville, for appellants.

Jackson D. Guerrant, James G. Begley, Danville, for appellees.

STANLEY, Commissioner.

The appeal is from a declaratory judgment concerning the ownership of a 263 acre farm. The decision rests on the construction of the will of Mrs. Fanny Johnston Bell Lee probated in 1901.

The testatrix devised her land to her two sons, Joshua and Thomas Lee, for life with restrictions on its disposition, and then to their "legitimate children" with restrictions against selling or conveying the property to persons not of "blood kin" of the testatrix. The will then provides:

"Should both Joshua and Thomas die and leave no legitimate children, the whole of the property is to go to my brother and sisters, namely, Thomas Helm Bell and Mrs. Mary M. Bell Allen and Mrs. Pattie Bell Engleman and their children but my brother and sisters or their children cannot deed, give or sell away any part of the land, silver and jewelry to any one not of my blood kin."

This is the crucial and controversial part of the will.

The testatrix's two sons died without children, Thomas in 1925, and Joshua in 1943. The testatrix's sister, Mrs. Mary Allen, predeceased them in 1910 without issue. She devised all of her property to her husband for life and the remainder to her sister, Mrs. Pattie Engleman. The testatrix's brother, Thomas Bell, and her other sister, Mrs. Engleman, died intestate with surviving children and descendants. The question is whether the estate which Mrs. Allen had received under the will of

her sister, Mrs. Fanny Lee, passed under Mrs. Allen's will to her sister, Mrs. Engleman, on the death of her husband. The circuit court held Mrs. Allen had a devisable estate and, therefore, that Mrs. Engleman's branch of the family owns an undivided two-thirds interest in the farm, one-third directly under the will of Mrs. Lee and one-third under the will of Mrs. Allen, and Thomas Bell's branch the other third.

The appellants contend each branch of the family owns a half interest. They submit that no interest in the farm passed under Mrs. Allen's will because (1) she had only a contingent remainder, and having died before the remainder estate could vest, she had no interest to devise; and (2) Mrs. Lee's devise to her brother and sisters "and their children" was of life estates with remainder to their respective children, and since Mrs. Allen had no children, the entire estate vested in the children of Mrs. Engleman and Thomas Bell. The appellees contend that Mrs. Allen received a present and vested remainder estate in the land under Mrs. Lee's will subject to being defeated by the death of testatrix's sons with children, i. e., a defeasible fee, which was devisable.

We are impressed with the argument that the devise to the testatrix's sisters and brother was a contingent remainder, for the legacy was introduced by the word "should" and was to pass to them and to "their children" as substitutional beneficiaries only upon a future happening of an uncertain event, that is the legacy was given subject to a condition precedent that might never have become operative. In a case where the will was peculiarly like Mrs. Lee's will and where a contingent remainderman died without issue before the first taker, it was held that substitutional or alternate remaindermen had received "a mere executory remainder or prospective estate" and where one of them (comparable to Mrs. Lee) died before the estate vested, his devisee received no part of the estate. Lepps v. Lee, 92 Ky. 16, 17 S.W. 146, 13

K.L.R. 137. See also Newton v. Southern Baptist Theological Seminary, 115 Ky. 414, 74 S.W. 180; Lindenberger v. Cornell, 190 Ky. 844, 229 S.W. 54; Boggess v. Crail, 224 Ky. 97, 5 S.W.2d 906. But we need not pursue this point or base our decision upon it, for we are impelled to differ from the circuit court and to hold that the devises to Mrs. Allen and her sister and brother were life estates, which, of course, could not be extended or passed by Mrs. Allen to her sister, Mrs. Engleman.

▪ It is to be noted that the substitutional devise was to these three by name "and their children." The learned chancellor, of course, recognized the familiar rule that where a devise is to a parent and his or her children, the parent receives a life estate with the remainder vesting in the children unless there is something in the will showing a contrary intention. KRS 381.090; Collis v. Citizens Fidelity Bank & Trust Company, 314 Ky. 15, 234 S.W.2d 164. If that contrary intention appears, then the added clause "and their children" is regarded as meaning heirs and as limiting the estate and creating an estate tail, which is converted by the statute into a fee simple estate. KRS 381.070.

The chancellor found such contrary intention from the fact that the testatrix had expressly devised life estates to her sons, and concluded that she knew how to give a life estate and had not done so in the devise to her sisters and their children; and the further fact, stipulated of record, that at the time the will was written, Mrs. Allen was 61 years old, had never had a child and had passed the child bearing period of life. These things are germane to ascertaining the intention of the testatrix. But we find other bequests and recitations in the will which seem to us to negate the idea of an intention contrary to the legal presumption of life estates to the parents and vested remainders to their children.

▪ The testatrix, Mrs. Lee, was an elderly lady when she wrote her will. It

is meticulous in describing and disposing of her heirlooms and personal effects. She concluded the will with the statement, "I have written this tonight after mature prayerful deliberation, and not feeling well and I may not be alive in the morning and. therefore I have written what I have and all who read this must know that it is my will and written by my own hand this night December the 6th, 1897, at my own house Marys land." In construing such a will the pervading intent of the testator is to be ascertained by a liberal interpretation and by having regard for the usual and popular meaning of the terms, as distinguished from the technical meaning. Cummings v. Nunn, 290 Ky. 609, 162 S.W.2d 213; Jennings v. Jennings, 299 Ky. 779, 187 S.W.2d 459; Page on Wills, §§ 921, 1009.

The context of the will throughout evinces a purpose of the testatrix to have her estate pass to the generation of children of the designated individual beneficiaries. That is the tenor of the whole will. The first devise of land, livestock and furniture was to her two sons for life with restrictions against disposing of the land and a provision "it is to be their childrens," and if one of the sons should die without leaving "legitimate children," his share in the property should go to the other for his lifetime and then to his "legitimate children" with like restrictions on alienation. Then follows the above quoted contingent disposal to the testatrix's sisters and brother "and their children" with the same restrictions. Certain jewelry and miniature paintings were bequeathed to two nieces with repeated directions that they were to be kept as heirlooms "in my family, my blood kin" as she wished "no stranger or alien people to possess them." Other items of jewelry were given to her sons with the admonition that they should "keep them carefully for their children."

■ Where words occur more than once in a will, there is a strong inference that they are used in the same sense in all places where found unless something appears in the context indicating the testator intended to use them in a different sense, or unless the words are applied to different subjects. Where they are applied to the disposition of different parts of the testatrix's estate, they will be regarded as having the same meaning. Abbott v. Essex Co., 18 How. 202, 15 L.Ed. 352; Fowler v. Whelan, 83 N.H. 453, 144 A. 63, 75 A.L.R. 752; Jones v. Holloway, 183 Md. 40, 36 A.2d 551, 152 A.L.R. 933; In re Irish's Will, 89 Vt. 56, 94 A. 173, Ann.Cas., 1917C, 1154; Note, "Construction of Words Repeated in Will," Ann. Cas.1914B, p. 64; Page on Wills, § 933; 57 Am.Jur., Wills, § 1152. Of special application to the present will is the holding in Caine v. Payne, 86 U.S.App.D.C. 404, 182 F.2d 246, 20 A.L.R.2d 823. The will used the same word three times, in two of which the meaning was quite clear from the context, and the third time it was ambiguous. The court held the ambiguity should be resolved by giving the same meaning to the word. In this case, Mrs. Lee's will contains a clear series of limitations to life estates without calling the gifts such and gifts in remainder to "children" and "blood kin," either expressly or by request. Giving the same meaning to the term "and their children" in relation to the substitutional devise to her sisters and brother is a safer way to ascertain the testatrix's intention than to give the words at that one place a different meaning.

■ We do not attribute a controlling significance to the attendant circumstance that the testatrix's sister, Mary, was and would continue to be childless. This may have been recognized by the testatrix, but it seems to us she was more likely to have been thinking of her sisters and brother and their children collectively as she had expressed her thoughts in other dispositions. We think she used the term "and their children" in the ordinary sense, with the usual and common understanding of the average, elderly woman as really meaning *children* and did not use it as would per-

haps a legal technician. These things destroy the force of an assumption of meaning which might be afforded by this attendant circumstance.

Viewing the entire will in the light of the foregoing considerations, we conclude the legal presumption of life estates and remainders in fee is strengthened rather than overcome.

A judgment in accordance with this opinion should be entered.

Judgment reversed.

MONTGOMERY, C. J., not sitting.