Probate Court, Strafford County
No. 7794

## *In re* ESTATE OF JOSEPH EMILE DUMAS

October 31, 1977

*Fisher, Parsons, Moran & Temple* and *Ronald B. Willoughby,* of Dover (*Mr. Willoughby* orally), for James Darrell Dumas.

*Calderwood, Ouellette & Hallisey,* of Dover (*Mr. Raymond R. Ouellette* orally), for Phyliss Dumas.

*Emile R. Bussiere,* of Manchester, by brief and orally, for the estate of Rachel Dumas.

KENISON, C.J. This case presents a certification of questions of law from the Probate Court for Strafford County (*Galanes,* J.) pursuant to RSA 547:30. The executor of the estate of Joseph Emile Dumas petitioned the probate court for interpretation and construction of the testator's will. An agreed statement of facts was subsequently formulated by the parties.

The agreed facts are as follows:

Joseph Emile Dumas died testate, on May 17, 1973, owning certain real estate in Somersworth, New Hampshire. He was survived by his widow, Rachel Dumas, a grandchild, Claudine Dumas and a great grandchild, James Darrell Dumas. The will was proved in the common form on June 22, 1973, and the widow did not exercise her privilege to waive the provisions thereof.

The pertinent provisions of the will are as follows:

*"FIRST:* Except as hereinafter mentioned, I make no provision for my son, Paul E. Dumas.

*"SECOND:* My real estate situate in Somersworth on the Easterly side of Green Street, I give and devise to my wife, Rachel Dumas, for and during her lifetime, together with all of the income therefrom and upon the condition that from said income or other sources she pay all charges for taxes, insurance, water and ordinary maintenance; and upon her death I give and devise said real estate to my son, Paul E. Dumas, if he is then living. In the event

that my said son is not then living, then I give and devise said real estate by my grandchildren, David Dumas and Darrell Dumas, in equal shares, to them, their heirs and assigns forever.

"THIRD: All the rest, residue and remainder of my estate whether real or personal, wherever the same may be situate and to which I shall be in any way entitled at the time of my decease, I give, devise and bequeath to my wife, Rachel Dumas and it is my expectation that if the residue of my estate is not sufficient for the payment of my debts, funeral charges and expenses of administration that she will provide the funds for the payment of said charges in order that my real estate above mentioned shall not be required to be sold for the payment of debts and that it shall pass as directed under the terms of this will."

Paul E. Dumas predeceased Joseph Emile Dumas. At the time of his death he was divorced from Phyliss Dumas and was survived by Claudine Dumas, a child of his second marriage.

Darrell Dumas died July 31, 1965, unmarried and intestate, survived by his father, Paul E. Dumas, and his mother, Phyliss Dumas.

David R. Dumas died February 13, 1967, intestate, survived by his minor son, James Darrell Dumas. Robert H. Temple was duly appointed guardian of the estate of James Darrell Dumas May 28, 1968.

The estates of Darrell Dumas, David R. Dumas, and James Darrell Dumas were duly administered in the Probate Court for Strafford County.

Rachel Dumas died December 2, 1975, and Emile R. Bussiere was duly appointed administrator of her estate by the Probate Court for Hillsborough County.

James Darrell Dumas owns a one-half interest in said real estate as the surviving heir of David R. Dumas.

The following questions were certified by the probate court:

"1. Was there a lapse of the devise to Darrell Dumas in Paragraph 2 of the will of Joseph Emile Dumas so that a one-half interest in said real estate passed to Rachel Dumas as residuary legatee?

"2. If there was no lapse of the devise to Darrell Dumas,

(a) did such gift pass solely to Phyliss Dumas, the heir at law of Darrell Dumas living at the time of the death of Rachel Dumas? or

(b) did such gift pass one half to Phyliss Dumas and one half to Claudine Dumas and James Darrell Dumas as the descendants of Paul E. Dumas living at the time of the death of Rachel Dumas?

(c) did such gift of the remaining half pass solely to James Darrell Dumas?"

We conclude that the testator intended that the real estate should pass to the survivor of David Dumas or Darrell Dumas, or their issue, if either of them predeceased the life tenant. We apply the class gift concept to effectuate this intent.

The bequest to "my grandchildren, David Dumas and Darrell Dumas, in equal shares, to them, their heirs and assigns forever" ordinarily imports a gift to individuals. However, this construction will yield to the intent of the testator to confine the bequest to the named legatees, by employing the class gift concept to carry out this intent. *In re Devin Estate,* 108 N.H. 190, 230 A.2d 735 (1967); *Roberts v. Tamworth,* 96 N.H. 223, 73 A.2d 119 (1950); *Fowler v. Whelan,* 83 N.H. 453, 144 A. 63 (1928); *Hall v. Smith,* 61 N.H. 144 (1881). "Though the bequest be to individuals by name, yet if it appears upon the whole will that the testator considered them as constituting a class, and intended that the whole should go to the survivors, that intention will prevail." *Fowler v. Whelan,* 83 N.H. at 456, 144 A. at 65; *Hall v. Smith,* 61 N.H. at 146.

It must be conceded that it is difficult to know exactly what the testator intended in the unlikely situation of his son and two named grandchildren predeceasing his wife. In such a case "the court is ascertaining not what the testator actually intended in regard to a particular matter but what he would have intended if he had thought about the matter." *Roberts v. Tamworth,* 96 N.H. at 225, 73 A.2d at 121. This brief will reveals but one discerning purpose: that the testator's widow was to receive a life estate in the real estate but nothing greater than a life estate, and that she was to do everything necessary in order to preserve the property so that it would pass to the named devisees. This purpose becomes more evident when it is considered that Rachel Dumas' closest heirs, and those who would take if the real estate passed to her estate, were children of Rachel's through a prior marriage and unrelated to the testator.

The only fair and reasonable interpretation of this will is that the testator intended that the real estate be confined to the

devisees named in the second clause of his will, and that no portion of the real estate should lapse into the residue. We may carry out this intent although the general rule is that a legacy will lapse by the death of a legatee during the lifetime of the testator, where the bequest is made to several legatees by name, to be equally divided between them. "[S]uch application of the rule must yield to a paramount intention to constitute the named legatees a class, with rights of survivorship, when such intention appears from the whole will, construed in light of the competent facts." *Fowler v. Whelan,* 83 N.H. at 455, 144 A. at 65. In addition, we do no violence to the class gift concept by finding that the testator intended to restrict the class to the two grandsons named in the will. Although the creation of a class gift is an appropriate method of making a bequest to members of the class born after execution of the will (here Claudine Dumas), the fact that the class does not include new members does not, of itself, make the gift one to individuals. 4 W. Page, Wills 494 (Bowe-Parker ed. 1961). Where the provisions of the will indicate a purpose which can be achieved only by construing the gift as one to a class, the gift will be so construed although the class be restricted to the beneficiaries that are named. *See In re Devins Estate,* 108 N.H. 190, 230 A.2d 735 (1967); *Roberts v. Tamworth,* 96 N.H. 223, 73 A.2d 119 (1950); *Fowler v. Whelan supra.*

Phyliss Dumas has argued that the language "to them, their heirs and assigns forever" in the bequest to David and Darrell Dumas constitutes a bequest to her, as the only surviving heir of Darrell Dumas. Although we conclude that the testator did not intend the real estate to lapse into the residuary estate, this is insufficient to find an intent to use these words as a means of substituting the grandchildren's heirs for a predeceased grandchild. "These words have a well-settled construction, by which they are held to be merely words of limitation used to describe the nature of the estate given to the beneficiary, and not to express an intention that a lapse should be avoided by the substitution of the heirs in place of the predeceased devisee or legatee. Where words and terms like these have a well-settled and understood meaning, they will not be given a different one, unless it appears that the testator employed them in a different sense and intended to express a different meaning." *Loveren v. Donaldson,* 69 N.H. 639, 649, 45 A. 715 (1899). We think it more harmonious with the testator's expressed desire to have the real estate pass to his named grand-

children to construe the gift to them as constituting a gift to a class, than to find an intent to use the words "to them, their heirs and assigns forever" as a grant to the grandchildren's heirs.

In answer to the certified questions, the bequest to Darrell Dumas in paragraph 2 of the will did not lapse, but passed solely to James Darrell Dumas, as the lineal descendant of David Dumas.

*Remanded.*

All concurred.